BERNARD A. CAMPBELL, APPELLANT, v. DEPARTMENT OF CIVIL SERVICE, STATE OF NEW JERSEY, RESPONDENT.

Argued February 4, 1963—Decided April 1, 1963.

Mr. *Perry E. Belfatto* argued the cause for the appellant.

Mr. *Milton Diamond,* Deputy Attorney General, argued the cause for the respondent (Mr. *Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

JACOBS, J. The respondent Department of Civil Service sustained the dismissal of appellant Bernard A. Campbell as deputy director of the Division of Workmen's Compensation. Mr. Campbell appealed to the Appellate Division and we certified before argument in that court.

On March 11, 1957 the appellant was appointed by the Commissioner of Labor and Industry as a deputy director of compensation (now called judge of compensation, *L.* 1960, *c.* 58; *N. J. S. A.* 34:1A–12). The appellant, along with the other deputy directors, was considered by the Division as being subject to the terms of the civil service law including its provisions relating to service standards and ratings. See *N. J. S. A.* 11:7–7; *R. S.* 11:13–1; *R. S.* 11:4–3; *N. J. S. A.* 11:4–4(g). His appointment was without fixed term and he was removable only for cause as provided by the civil service law and rules. *N. J. S. A.* 11:7–7; *R. S.* 11:15–2 *et seq.*; *cf. Swartz v. Civil Service Com.,* 3 *N. J. Super.* 6 (*App. Div.* 1949); *Young v. Civil Service Commission,* 127 *N. J. L.* 329 (*Sup. Ct.* 1941). Civil Service Rule 59(c) provides that there may be removal for "incompetency or inefficiency in the service or incapacity due to mental or physical disability"; 59(d) provides that "inefficiency in the performance of the duties of his position so that his service rating as maintained in accordance with the civil service rules is less than 70%" shall constitute sufficient cause for removal; and Rule 59 also states that removals may be made for causes other than those specifically enumerated.

In April 1958 the appellant was notified that he had received a service rating of unsatisfactory for the period from October 1, 1957 to March 31, 1958. His rating was 1.0 which was the lowest possible rating. He conferred with Mr. Ned J. Parsekian, then Director of the Division of Workmen's Compensation and was told, according to Mr. Parsekian's testimony, that the rating was a serious matter, that it indicated Mr. Campbell had not performed his duties with sufficient satisfaction, and that "it meant that he would have to improve markedly in the future and soon." Mr. Parsekian also testified he then informed Mr. Campbell that two consecutive unsatisfactory ratings would be basis for dismissal. On December 3, 1958, a service rating of unsatisfactory (1.0) for the period from April 1, 1958 to September 30, 1958 was sent to Mr. Campbell. Both of the

service ratings were signed by Mr. Parsekian and were duly served but the personnel employee of the Division of Workmen's Compensation evidently did not file them with the Civil Service Department until a much later date.

On December 5, 1958 the Division of Workmen's Compensation served a preliminary notice of disciplinary action on Mr. Campbell. The notice advised him that, pending hearing, he was removed from his position of deputy director because of incompetency and inefficiency in the service and because of the service ratings. It also advised that before final action was taken a hearing would be held on December 22, 1958 at which time Mr. Campbell could appear and offer any evidence or testimony in his defense. On December 22 the hearing was begun and it continued during February and March 1959 before George S. Pfaus, Acting Commissioner of the Department of Labor and Industry. On the Department's behalf, the service ratings were presented and testimony was introduced in support of ten specific charges of incompetency and inefficiency. In addition, evidence was introduced relating to two matters which occurred while the proceeding before the Acting Commissioner was pending and which bore on Mr. Campbell's fitness to continue as deputy director. He was advised that the Acting Commissioner would consider these matters and chose not to introduce any evidence to meet them. However, he did appear and introduced evidence bearing on the ten specific charges. After the close of the hearing, Acting Commissioner Pfaus rendered his opinion which dealt fully with the ten charges and the two additional matters. He concluded that the charges of incompetency and inefficiency had been sustained and that the appellant should be removed permanently from the position of deputy director.

On July 24, 1959 Mr. Campbell appealed to the Department of Civil Service from his dismissal as deputy director. A hearing *de novo* was held before Civil Service Commissioner Gilroy. It was begun on September 24, 1959, was continued during 13 additional days, and was finally concluded on June 30, 1960. Extensive testimony was intro-

duced before Commissioner Gilroy by the Department of Labor and Industry, which was represented by a Deputy Attorney General, and by Mr. Campbell, who was represented throughout the hearing by counsel. Briefs were submitted and on August 2, 1961 the Civil Service Commission rendered its decision sustaining the dismissal. Its formal opinion dealt in detail with the charges and the testimony and made appropriate factual findings. We will refer to those findings to such extent as may be required for the proper disposition of the appeal from the Commission's determination. In this connection the limited scope of judicial review must be borne in mind; ordinarily, we will not upset a determination by the Commission in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act. See *Marro v. Civil Service Dept.*, 57 *N. J. Super.* 335, 346 (*App. Div.* 1959); cf. *Briggs v. N. J. Dept. of Civil Service,* 64 *N. J. Super.* 351, 354 (*App. Div.* 1960); *East Paterson v. Civil Service Dept. of N. J.,* 47 *N. J. Super.* 55, 65 (*App. Div.* 1957); *Dutcher v. Department of Civil Service,* 7 *N. J. Super.* 156, 162 (*App. Div.* 1950). See also *Rogers v. Dept. of Civil Service,* 17 *N. J.* 533, 541 (1955); *Kaplan, Civil Service* 249–250 (1958).

In its first charge, the Department of Labor and Industry asserted that on his assignment to hear informal matters, Mr. Campbell failed to record necessary information and his recommendations, with resulting embarrassment to the Department in that at least on one occasion it was obliged to ascertain from the insurance carrier what had been the disposition of the matter. As indicative of Mr. Campbell's attitude, the Department pointed out that he had walked out on his training session in informal matters; his explanation is that he had been called out by another deputy director. The Commission stated that it did not consider the walking out as a major issue but it did find that Mr. Campbell had failed to record necessary information as charged. It expressed the

thought that the first charge was merely ministerial in character and evaluated it "only as part of cumulative testimony of his service in the Department."

The second charge carried implications of greater significance. In a proceeding which may here be described as the *Lowe* case, an award of $\frac{1}{2}$ of 1% was rendered. Counsel for the insurance carrier testified that Mr. Campbell stated that he would have made it $\frac{1}{4}$ of 1% "if it were not so difficult to figure it out." Mr. Parsekian testified that when the unusual award came to his attention, he made inquiry and was told by Mr. Campbell that since the petitioner was a colored person he did not want him to think that he was being discriminated against and "so rather than dismiss the case I gave him a half per cent of total." During the hearing before Commissioner Gilroy, Mr. Campbell gave testimony which sheds further light on the award.

Mr. Campbell testified that in another matter he had rendered an award of 2% which was reversed on appeal and that at that time a deputy told him that if he had not awarded as much the chances were that he "would not have been taken up in the first place." When asked whether he believed that it would be improper to consider the possibility of reversal in fixing the amount of the award, he said, "not necessarily" since the employee had some injury for which he should be compensated and "you are certainly not doing him a favor if you give him an award that invites an appeal because of the size of it." He indicated that he viewed workmen's compensation legislation simply as a matter of favor to the employee. But *cf. Danek v. Hommer*, 9 *N. J.* 56, 58 (1952). He rejected the rule of preponderance of evidence saying, "if the evidence leaves you in such a conclusion that it is equally consistent with the verdict in favor of the petitioner as well as a dismissal, then you must give an award in your determination for the petitioner." The law is otherwise. See *Parker v. John A. Roebling's Sons Co.*, 135 *N. J. L.* 440, 442 (*Sup. Ct.*), aff'd 136 *N. J. L.* 635 (*E. & A.* 1947); *Page v. Federated Metals Div., Amer. Smelt. & Ref. Co.*, 71 *N. J. Super.*

59, 61 (*App. Div.* 1961), certif. denied 38 *N. J.* 302 (1962). Later on in his testimony, he expressed the view that when dealing with what he described as a minimal award, it was proper, in fixing the amount, to consider the possibility of reversal since "it doesn't do the Department much good, or the injured workman, if you give an award that invites an appeal, and it's taken, and that his money that he needs badly is denied to him." This indefensible approach suggests a lack of comprehension of the nature of the deputy director's functions and reference to it serves to reenforce the Commission's finding that in the *Lowe* case Mr. Campbell had rendered an award which he fixed at ½% "for reasons other than the amount of disability proven."

The third charge related to the *Camburn* case in which the petitioner was awarded permanent partial disability of 15% of total in addition to 21 weeks of temporary disability. During the noon hour following the hearing, the petitioner told Mr. Campbell that he wanted medical treatment rather than a monetary award and, according to his testimony, Mr. Campbell replied, "How stupid can you be? You go to the lawyer about that." The petitioner testified further that at a later meeting he told Mr. Campbell that he could not understand the kind of hearing he had received and that he was then told, "You are not supposed to —— that's what the lawyer goes to college for." The petitioner then wrote to Mr. Parsekian and thereafter the matter was brought on before another deputy director who entered an award suspending the permanent disability payments and ordering further medical treatment. The Commission considered the third charge of some significance not because of the award rendered by Mr. Campbell but because of the attitude evidenced by him in his conversations with the petitioner.

The fourth charge related to the *Caucci* case in which an application for benefits from the One Per Cent Fund came on for hearing before Mr. Campbell, was voluntarily discontinued, and was followed by a second application. Mr. Parsekian testified that he reviewed all One Per Cent Fund

decisions before transmitting them to the Commissioner and that when he noticed the voluntary discontinuance and re-application in the *Caucci* matter he made inquiry and ascertained from the petitioner's attorney that when his doctor testified that the petitioner was 85% disabled (whereas 100% disability is required for benefits from the One Per Cent Fund) Mr. Campbell advised that there should be a voluntary discontinuance. The petitioner's attorney testified that she had another doctor who would state that the petitioner was 100% disabled and that she requested an adjournment in order to enable the introduction of his testimony but that Mr. Campbell repeated his recommendation that there be a voluntary discontinuance. Mr. Parsekian viewed Mr. Campbell's action as an effort to wash out the testimony which would not support the claim for benefits from the One Per Cent Fund. He expressed the view that there should have been no voluntary discontinuance but that the matter should have been adjourned so that the additional testimony could have been introduced and the case properly determined on the basis of all of the testimony. When Mr. Parsekian asked Mr. Campbell for an explanation, he was told that the petitioner had been unable to produce testimony respecting a previous disability and that the determination to discontinue the application was that of the petitioner's attorney. After examining the record in the *Caucci* matter, Mr. Parsekian found Mr. Campbell's explanation "to be inaccurate." The Commission stated that, apart from the cumulative evidence it afforded bearing on Mr. Campbell's attitude and his knowledge of the procedure, it considered the *Caucci* matter as "comparatively unimportant"; it did, however, make a finding that Mr. Campbell had improperly permitted the case "to be listed for voluntary dismissal after testimony adverse to the petitioner was adduced."

The fifth charge related to the *Turner* case in which Mr. Campbell made an award to the petitioner of 12½% of total permanent disability. Thereafter the petitioner made application for benefits from the One Per Cent Fund. See *N. J. S. A.*

34:15–94; *N. J. S. A.* 34:15–95. During the course of the One Per Cent Fund hearing, it appeared that the petitioner's pre-existing condition was aggravated by the industrial accident into total disability. On that showing the petitioner's counsel agreed that benefits were not payable from the One Per Cent Fund. See *Wexler v. Lambrecht Foods*, 64 *N. J. Super.* 489, 501 (*App. Div.* 1960), certif. denied 34 *N. J.* 326 (1961); *cf. Ratsch v. Holderman*, 31 *N. J.* 458 (1960). Counsel then sought to reopen the original proceeding before the Division. He testified that although he had always held the opinion that the accident had aggravated the petitioner's pre-existing condition and brought on total disability, he nonetheless made no objection to the amount of the award because Mr. Campbell gave him the impression that the petitioner could automatically obtain the balance in a One Per Cent Fund proceeding where the earlier findings would be *res judicata*. Mr. Parsekian testified that the findings would not be *res judicata* and that it was possible in the One Per Cent Fund proceeding to reject a prior finding on the issue of causal relation. He testified further that Mr. Campbell, as well as all of the other deputy directors, had received the necessary information and instructions relating to One Per Cent Fund proceedings. The Commission found that in the *Turner* case Mr. Campbell had misadvised the petitioner's counsel but it quite properly remarked that counsel himself had the responsibility to ascertain the applicable procedures and principles and act accordingly in the interests of his client.

The sixth charge (*Throckmorton*) was not pressed and the next related to the *Tocci* case in which an employee, while warming up for an inter-shop soft ball game, attempted to backhand a fly ball and injured himself. He filed his claim petition for compensation in the Division and the matter came on before Mr. Campbell who dismissed the petition upon the finding, *inter alia*, that the employee had been "willfully negligent." Negligence is not a defense to a petition for workmen's compensation. See *Belyus v. Wilkinson, Gaddis & Co.*, 115 *N. J. L.* 43, 49 (*Sup. Ct.* 1935), aff'd 116 *N. J. L.*

92 (*E. & A.* 1936). Mr. Campbell had relied on *R. S.* 34:15–1, but that related to actions at law and not to workmen's compensation petitions before the Division. The dismissal of the petition in *Tocci* was later set aside. See *Tocci v. Tessler & Weiss, Inc.*, 28 *N. J.* 582 (1959). Mr. Parsekian testified that Mr. Campbell's treatment of "the manner in which the ball was caught" as willful negligence constituting a defense to the workmen's compensation petition, resulted in embarrassment to and ridicule of the Division.

The Commission, after referring to the Division's position that the *Tocci* decision was a source of embarrassment since "it revealed a lack of knowledge of the basic concepts of the Workmen's Compensation Law," made the brief finding that Mr. Campbell had dismissed the petition because of willful negligence "though no such defense is admissible." More troublesome than his original action was Mr. Campbell's failure, as late as the hearing before the Commission, to acknowledge what he should by then have recognized as a settled concept in workmen's compensation proceedings. When he was asked whether willful negligence was a defense against a workmen's compensation claim brought in the Division, he said that the question could not be answered "yes or no" and later said that he was sure that there was a "difference of opinion as to willful negligence."

The next charge related to the *Novatin* matter, where during the course of a workmen's compensation proceeding against two respondents, it appeared that the petitioner had been involved in an earlier accident and had received an award of 7% against the first respondent. When Mr. Campbell found the petitioner disabled to the extent of 25%, he ordered that 18% be paid by the second respondent thus leaving in status quo, the first respondent who had paid the 7%. Counsel for the second respondent contended that his client should only pay 12½% of the 25% award, and when he persisted in his contention, Mr. Campbell stated that since the second respondent was objecting to any credit which had been

offered, it should pay the entire 25%. An award to that ef-
fect was entered. Examination of the record indicates that
counsel at that time stated the following: "I want a credit
but I feel the credit was not sufficient and that was the con-
tention of the respondent." Although the award was later
amended to allow the 7% credit, the incident may be sug-
gestive of a lack of suitable temperament. The Commission,
after finding that Mr. Campbell had originally improperly
refused the 7% credit, expressed the view that since the credit
was ultimately allowed, "no one was injured by Mr. Camp-
bell's actions."

The next charge related to the *Smith* matter where an ap-
plication seeking increased benefits was scheduled to be heard
on January 13, 1958. Though it was near the head of the
list for that day, and though the petitioner was ready with
his doctors on telephone call, the case was never called for
hearing. Mr. Campbell passed it by, heard another matter
which consumed the day, and marked the case "not reached."
Counsel for the petitioner in the *Smith* case testified that Mr.
Campbell indicated to him that since his application was one
for increased benefits rather than an original application, it
should be deferred in favor of another case which was sched-
uled to be heard for the first time. Mr. Parsekian testified
that there was no such Division policy and that he considered
it improper for the case to have been marked "not reached"
since it had in fact been reached although not heard. Mr.
Campbell testified that the doctor in the *Smith* case was not
in court when it was reached and that he accordingly pro-
ceeded with the *Throckmorton* case which involved an old
man in poor physical condition who would have been greatly
inconvenienced if his case had not then been heard. The
Commission found that Mr. Campbell had passed over a case
when it was ready, had improperly marked it "not reached"
and had "erred in judgment in adopting a policy that cases
being reopened were not as important as original cases in
which there had not been a previous judgment"; however it

cautioned that deputy directors should not be denied sufficient latitude in controlling and rearranging their calendars.

The next charge related to the *Lynch* matter in which Mr. Campbell had made a miscalculation in an award. The insurance carrier wrote to Mr. Campbell about the matter under date of September 18, 1958 but never received any reply from him. Its follow-up letter was dated January 14, 1959 and received the attention of another deputy director. Mr. Campbell testified that he was ill about the time in question but the Commission found from the Division's records that he had "more than a month in which to answer the letter before he became ill."

The Commission made no further comments with respect to the aforementioned charges but proceeded in its decision to deal with three items which it described as (1) the successive unsatisfactory service ratings received by Mr. Campbell, (2) the injudicious conduct of Mr. Campbell which was cited by Judge Leonard in the case of *Burkley v. Atlantic City* and (3) Mr. Campbell's improper conduct in practicing before the Division while he was under suspension. It found these items to be sufficiently serious in themselves to justify the appointing authority's removal of Mr. Campbell as deputy director.

Mr. Parsekian testified at length with respect to his handling of the service ratings of Mr. Campbell and the other deputy directors. The Department of Civil Service had prepared a performance rating manual and had forwarded performance rating forms to the Division. In addition, it had sent a representative who addressed supervisors in the Department of Labor and Industry on the pertinent rating elements including matters of promptness, attendance to duties, courtesy, ability to get along with coworkers and similar items. Mr. Parsekian stated that his opinions as to the performance of his deputy directors were based on his supervisory activities including discussions with Division personnel, examination of transcripts and files, investigation of complaints, and complete familiarity with the One Per Cent Fund proceed-

ings, all of which were required to cross his desk. He expressed the view that a high percentage of Mr. Campbell's One Per Cent proceedings were poorly handled and that based upon his performance generally and compared to other deputy directors, Mr. Campbell was "outstandingly poor."

After the first rating of unsatisfactory was sent to Mr. Campbell in April 1958, he conferred with Mr. Parsekian who testified that he then informed him that two unsatisfactory ratings in sequence would mean that he could be dismissed from service and that perhaps he felt that workmen's compensation was not his field and that he would "be interested in something else in the state government." The reply, according to Mr. Parsekian, was "I guess this isn't my cup of tea, and perhaps I could do something else more adequately," or words to that effect. Mr. Parsekian later suggested specific openings but he was apparently not interested in them. The second rating of unsatisfactory was sent in December 1958 and was followed by the preliminary notice of disciplinary action.

The Commission stated that Mr. Parsekian presumably acted in good faith and that it would not substitute its evaluations of Mr. Campbell's performance for that of the Director who actually supervised his work. It pointed out that under the performance rating manual issued by the Department of Civil Service pursuant to *R. S.* 11:13–1, "all permanent and temporary officers and employees in the State Classified service who have worked at least three months during the period" are rated; this included Mr. Campbell who under *R. S.* 11:4–3 and *N. J. S. A.* 11:4–4(g) was in the classified service. The Commission referred to the fact that the service ratings were not filed with the Civil Service Department until long after they were sent to Mr. Campbell but it determined that this did not impair their effect or invalidate the proceedings. Nor did it place any weight on technical deficiencies in their preparation since it was satisfied that the ratings were fairly executed and served.

The Commission expressed the opinion that, in view of the nature of the deputy directors' functions, they should not be subjected to the same standards as are employed in evaluating clerical help. It suggested that where an appointment is made of a deputy director who does not grasp the intricacies of the workmen's compensation law, he should be subject to dismissal through some procedure other than consecutive service ratings of unsatisfactory. However, it pointed out that such other procedure has not been provided for, that Title 11 (*N. J. S. A.* 11:7–7) expressly subjects deputy directors to the removal provisions of the civil service law, and that if those provisions were not available, the deputy directors would be immune from disciplinary control except perhaps through an extraordinary avenue such as an impeachment proceeding. See *N. J. Const., Art.* VII, § III, *par.* 1; *cf. N. J. Const., Art.* V, § IV, *par.* 5; *Holmes v. Osborn,* 57 *Ariz.* 522, 115 *P. 2d* 775 (1941).

In *Burkley v. Atlantic City,* an appeal was taken to the county court from an award rendered in the petitioner's favor by Mr. Campbell. Judge Leonard, sitting in the Atlantic County Court, examined the record and declined to determine the merits because he agreed with counsel for the respondent's contention that the manner in which Mr. Campbell had conducted the proceeding in the Division had deprived him of a full, fair and impartial hearing. He remanded the case to the Division for a new hearing, noting that at one point Mr. Campbell had told counsel for the respondent to "sit down and shut up," at another point had engaged in an off-the-record discussion with a witness, notwithstanding counsel's objection, and had throughout the proceeding "unduly interfered with counsel and witnesses; harassed them; was impatient, discourteous" and had otherwise disregarded elemental guideposts which, in the judicial process, may be found set forth in the canons of judicial ethics.

In his defense, Mr. Campbell stated that he was endeavoring to control counsel and shorten trial time. He denied

that he was discourteous and referred to his actual remark "Will you shut up and sit down" as not having been addressed to a single counsel but to several participants who were talking at the same time. He stated that Mr. Parsekian had directed that he take over the questioning of medical witnesses and referred to a written memorandum which, however, did not at all support his statement; the memorandum had simply quoted from the opinion of the Appellate Division in *Aromando v. Rubin Bros. Drug Sales Co.*, 47 *N. J. Super.* 286 (*App. Div.* 1957), certif. denied 26 *N. J.* 244 (1958), and had requested comments with respect thereto from all of the deputy directors. Acting Commissioner Pfaus found that the manner in which Mr. Campbell conducted the *Burkley* case presented further evidence in support of the charge that he was incompetent and inefficient in the service. On appeal, the Commission made the finding that Mr. Campbell was guilty of "injudicious conduct" which prejudiced the rights of the litigants in *Burkley* and which resulted in severe criticism from Judge Leonard. Although counsel for Mr. Campbell makes reference to the ultimate decision on the merits in *Burkley* (*Burkley v. Atlantic City*, 68 *N. J. Super.* 160 (*App. Div.*), certif. denied 36 *N. J.* 130 (1961)), that decision has no bearing on the conduct under consideration here.

While the departmental proceeding before Acting Commissioner Pfaus was pending, Mr. Campbell actually engaged in practice before the Division on behalf of petitioners. Thus in *Richards v. Lit Brothers*, he filed a claim petition resulting in an award which included a counsel fee in his favor. The original judgment in *Richards* was filed on June 18, 1959 and an amended judgment was filed on June 23, 1959. Mr. Campbell was advised that *Richards* would be considered in the proceeding before Acting Commissioner Pfaus but chose not to introduce anything to meet it. In his decision dated July 22, 1959, the Acting Commissioner expressed the view that Mr. Campbell's representation of a petitioner before the Division was highly improper and inconsistent with the posi-

tion he still held as deputy director, and that if it could not be said that it constituted an abandonment of his position, it was at least "a clear indication of Mr. Campbell's inability to comprehend what is proper or improper conduct."

On June 16, 1959, Mr. Campbell filed a claim petition in the Division in the matter of *Fiore v. Belmont Iron Co.* On October 13, 1959, a motion was made before the Civil Service Commission for dismissal of Mr. Campbell's appeal on the ground that his conduct in practicing before the Division barred its further prosecution. On the following day a stipulation to substitute attorney in *Fiore* was filed with the Division. On November 23, 1959 Mr. Campbell wrote a letter to Deputy Director Neutze, stating that he had received a listing of cases which included *Fiore* and, after referring to the substitution of attorney, advised that "he had no connections with this matter." On December 9, 1959 the hearing in *Fiore* was held before the Division and an award was rendered in the petitioner's favor. The judgment which was filed in the Division on December 17, 1959 included provision for $700 counsel fee in favor of David Roskein, petitioner's substituted attorney.

In the course of his testimony before the Commission, Mr. Campbell stated that during the hearing in *Fiore* he did not take part although he sat in the back of the room, and that he received "some compensation, but not a fee." Mr. Roskein testified that after he received the fee of $700 in *Fiore*, he mailed a check on January 26, 1960 in the sum of $350 to Mr. Campbell and delivered another $350 check to him on February 22, 1960. When asked why, he replied as follows: "It was his case. It was his fee. I merely did it as an accommodation to Mr. Campbell as I would to any other attorney in his position." Both of the checks were cashed. The Commission refused to grant the motion to dismiss the appeal but it did note that in reaching its decision, it gave full consideration "to the implications of Mr. Campbell's two appearances before the Workmen's Compensation Division." In its conclusion, it stated that it was satisfied that Mr. Campbell

was subject to merit rating, that it could not find any bias or capriciousness or arbitrary judgment by Mr. Parsekian, and that the unsatisfactory ratings, together with the proof that Mr. Campbell had practiced before the Division while under suspension and the clear-cut evidence of injudicious conduct cited by Judge Leonard in *Burkley*, were sufficient to justify Mr. Campbell's removal by the appointing authority.

In support of his appeal, Mr. Campbell attacks the jurisdiction of the Commission as well as its procedures and its actual findings. He claims that since he was appointed under *L. 1939, c. 111 (N. J. S. A. 11:7–7)* he was not to be viewed as a classified civil service employee subject to service ratings, and that the Commission lacked jurisdiction in connection with his dismissal. This latter attack is made though he was the one who sought relief from the Commission (*cf. Marro v. Civil Service Dept.*, 57 *N. J. Super.* 335, 343 (*App. Div.* 1959)) and it seems to rest on the wholly fallacious notion that he stood in the same position as a judge within the judicial department of government. Though the Legislature recently changed the title from deputy director to judge of compensation (*L. 1960, c. 58; N. J. S. A. 34:1A–12*), the change was only one of nomenclature without any alteration of status. It is firmly settled that, although the judges of compensation exercise functions which are somewhat akin to those exercised in the courts, they are in no sense members of the judicial department but are rather members of an administrative agency within the executive department. See *Mulhearn v. Federal Shipbuilding & Dry Dock Co.*, 2 *N. J.* 356, 360 (1949); *Nagy v. Ford Motor Co.*, 6 *N. J.* 341, 349 (1951); *DiMarcello v. American Bridge Co.*, 76 *N. J. Super.* 329, 334 (*App. Div.* 1962), certif. denied 38 *N. J.* 498 (1962); *New Amsterdam Casualty Co. v. Popovich*, 27 *N. J. Super.* 40, 43 (*App. Div.* 1953). The out-of-state decisions are to the same effect; many of them may be found collected in 100 *C. J. S. Workmen's Compensation* § 379b (1958).

Mr. Campbell's contention that he was not a classified civil service employee subject to service ratings is grounded

by him upon the fact that *L.* 1939, *c.* 111 (*N. J. S. A.* 11:7-7) provides that when a vacancy exists in the office of deputy commissioner of compensation (later called deputy director and now judge of compensation) it shall be filled without reference to the civil service law "and thereafter the person so appointed shall be in the exempt class of the civil service, and shall be subject to the provisions of Title 11 of the civil service law, and shall not be removed from his said office except in accordance with such law." It is clear to us that the appellant's contention must be rejected in view of the statutory language when read, as it should be, in the full light of the history of our State's civil service legislation and implementing regulations. *Cf. N. J. Pharmaceutical Ass'n. v. Furman,* 33 *N. J.* 121, 130 (1960); *State v. Clark,* 15 *N. J.* 334, 341 (1954).

*L.* 1908, *c.* 156, which provided for the creation of a civil service commission, set forth that the civil service of the State shall be divided into the unclassified service and the classified service, and that the classified service shall in turn contain four subclasses designated as the exempt class, the competitive class, the non-competitive class and the labor class. See *History of Civil Service Reform in the State of New Jersey, Appendix to Report of the New Jersey State Civil Service Investigating Committee* (1917). Subsequently, the Legislature adopted a statute which directed that the Commission provide for the keeping of efficiency records for use in connection with promotions and reductions in staff. *L.* 1916, *c.* 129; *cf. R. S.* 11:22-37. In its 1919 compilation of rules, the Civil Service Commission provided for the establishment of "records of efficiency of all officers and employees in the classified civil service." It also provided for the periodic filing of service ratings which would become part of the permanent records of the Commission and would be used in connection with promotions, salary advancements, dismissals, layoffs and reductions in staff.

In 1930 a revision of the law relating to the civil service of the State was enacted. *L.* 1930, *c.* 176. It continued the

distribution of the State's civil service into the classified service and unclassified service and was generally taken to have abolished the exempt subclass. See *R. S.* 11:4–3; *N. J..S. A.* 11:4–4; *The Civil Service Law and Rules for the State of New Jersey, Note to Rule 9, p.* 12 (1949). Among those expressly excluded from the classified service were judges, jurors, masters in chancery, referees, arbiters, and persons employed by a court to conduct any kind of judicial investigation or inquiry or to exercise judicial functions "except deputy commissioners of compensation." See *L.* 1930, *c.* 176, *par.* 44, *subpar.* 17(g); *N. J. S. A.* 11:4–4(g). The clear effect of all this was to place deputy commissioners of compensation in the classified civil service.

Section 29 of the 1930 revision directed that the chief examiner and secretary establish for each class of positions or groups of classes in the State classified service, standards of performance and output and a plan of service ratings based upon such standards. *L.* 1930, *c.* 176; *R. S.* 11:13–1. Rule 56 directs that the standards and the service rating plan shall be maintained current. The performance rating manual of the Department of Civil Service, issued pursuant to *R. S.* 11:13–1, provides for the rating of officers and employees in the classified service. Deputy commissioners of compensation, being in the classified service, were subject to service ratings. Sections 33 and 34 of the 1930 revision directed that the Commission provide by rule for suspensions and for the removal for cause of employees holding positions in the classified service. *L.* 1930, *c.* 176; *R. S.* 11:15–1 through *R. S.* 11:15–6. Rules 58 and 59 now implement the statutory provisions. See *Marro v. Civil Service Dept., supra,* 57 *N. J. Super.,* at *p.* 343.

When the Legislature enacted *Chapter* 111 of the *Laws of* 1939 (*N. J. S. A.* 11:7–7) it undoubtedly had in mind that the appointment of deputy commissioners of compensation should be permitted without competitive examination, but it apparently ignored the fact that the exempt subclass as such had been eliminated from the State civil service. That it did

not intend to exclude deputy commissioners from the civil service provisions generally was made abundantly clear by its express directions that they shall be subject to the provisions of *Title* 11 of the civil service law, and that they shall not be removed except in accordance with such law. Though the exempt class terminology was used, the deputy commissioners were nonetheless, as theretofore placed in the classified service and were subject to *Title* 11 including its provisions with respect to service ratings and removals for cause.

We recognize fully the danger that the rating system might be abused if invoked as a control over the deputy director's independent decision-making process. Mr. Parsekian testified that at no time did he ever seek to direct or interfere with a deputy's exercise of judgment as to the award in any particular case. He unequivocally acknowledged that he was never granted any such power and nothing in the record suggests to us that he ever improperly used his rating function to attain it. Nonetheless, as the Commission itself pointed out, a more suitable mode of supervision might well be considered for adoption by future legislative enactment or civil service regulation. *Cf.* Section 11 of the *Administrative Procedure Act* (5 *U. S. C. A.* § 1010); *United States Civil Service Commission Rule* § 34.11 (5 *C. F. R., p.* 221 (1961)).[1]

---

[1] In an effort to strengthen the independence of hearing examiners, the federal Administrative Procedure Act embodies a provision that the compensation of examiners shall be prescribed by the Civil Service Commission "independently of agency recommendations or ratings." A regulation of the federal Civil Service Commission provides that "agencies shall not rate the performance of hearing examiners." However the examiners are removable for cause established and determined by the Commission. See Fuchs, "The Hearing Officer Problem—Symptom and Symbol," 40 *Cornell L. Q.* 281, 291 (1955); 2 *Davis, Administrative Law Treatise* § 10.05 (1958); *cf. Musolf,* "Federal Examiners and the Conflict of Law and Administration," 70 *Johns Hopkins University Studies in Historical and Political Science* 1 (1953); Note, "The Administrative Law of Federal Hearing Examiner Personnel," 21 *Geo. Wash. L. Rev.* 38, 198 (1952); Note, "Hearing Examiner Status: A Recurrent Problem in Administrative Law," 30 *Ind. L. J.* 86 (1954). In *Re Karl Stecher,* 11 *Pike & Fischer Administrative Law 2d* 868 (1962), the Civil Service

When dealing with ratings of civil service employees generally, the courts have been very reluctant to interfere with the departmental determinations and have generally upheld dismissals based on unsatisfactory service ratings without more. See *Kaplan, Civil Service, supra,* at *pp.* 189–192; *Burge v. Oklahoma Employment Security Commission,* 200 *Okl.* 429, 195 *P. 2d* 285 (1948); *Parsons v. Los Angeles County,* 37 *Cal. App. 2d* 666, 99 *P. 2d* 1079 (1940); *cf. Thomas v. Ward,* 96 *U. S. App. D. C.* 302, 225 *F. 2d* 953 (*D. C. Cir.* 1955), *cert.* denied 350 *U. S.* 958, 76 *S. Ct.* 348, 100 *L. Ed.* 833 (1956); *cf.* also *Dodd v. Van Riper,* 135 *N. J. L.* 167, 172 (*E. & A.* 1947). In the instant matter the Civil Service Commission, though entirely satisfied that the service ratings of unsatisfactory were not shown to be arbitrary or made in bad faith, did not uphold the dismissal because of them alone; it confined its holding to the determination that the service ratings, when coupled with the

Commission reviewed the Interstate Commerce Commission's removal of Mr. Stecher from his position as hearing examiner on the charge of insubordination. The Civil Service Commission found that good cause had been established for disciplinary action and concluded that Mr. Stecher should be suspended for 30 days rather than removed. In *Re Clement L. McEachern* (United States Civil Service Commission 1962) the Social Security Administrator sought to remove Mr. McEachern as hearing examiner because of his financial irresponsibility and his failure to meet financial obligations. The Civil Service Commission held that this was good cause and ordered that Mr. McEachern be removed from the federal service. On appeal to the United States District Court for the Western District of South Carolina, Judge Wyche granted a government motion to dismiss. He declined to reevaluate the evidence and took the position that the charge could properly be viewed as constituting good cause for dismissal. *McEachern v. United States,* 212 *F. Supp.* 706, 712 (1963). In our own State there have been many fruitless attempts to obtain the passage of administrative procedure acts. See *Mazza v. Cavicchia,* 15 *N. J.* 498, 536 (1954). These proposed acts contained no pertinent provisions bearing on service ratings or removals of examiners for cause. And the same may be said of the Revised Model State Administrative Procedure Act which was approved at the 1961 Conference of the National Conference of Commissioners on Uniform State Laws.

injudicious conduct of the appellant in *Burkley,* and his improper activity in practicing before the Division during his suspension, were sufficient justification for his removal.

█ █ We are satisfied that the Commission had ample jurisdiction to hear and determine Mr. Campbell's appeal and we turn now to his complaint about the formal procedures which were followed in the Department of Labor and Industry and the Civil Service Commission. He contends that there was a failure to comply with *R. S.* 11:15–3 which directs the Commission to distribute a form on which the appointing authority removing any employee shall enumerate the cause as set forth in the Commission's rules or other cause which constitutes the ground for removal and the act of the employee constituting such cause. The rules of the Commission list a group of nonexclusive causes for removal, including "incompetency or inefficiency in the service" as well as "inefficiency in the performance of the duties of his position so that his service rating as maintained in accordance with the civil service rules is less than 70%." The preliminary notice of disciplinary action which was served by the Department of Labor and Industry upon Mr. Campbell was on a form prepared by the Commission and referred to both of the quoted grounds for removal. While the notice might well have set forth the specifics supporting the general charges of incompetency and inefficiency, Mr. Campbell was made fully aware of them during the days of hearing before the Department and was afforded ample opportunity to meet them. Furthermore, his appeal before the Civil Service Commission was *de novo* and by that time Mr. Campbell was thoroughly familiar with the individual charges, including the additional charges of injudicious conduct in *Burkley* and improper practice before the Division during his suspension. He was undoubtedly entitled to fair notice and opportunity to be heard. See *West New York v. Bock,* 38 *N. J.* 500, 522 (1962). But he had that, he never made formal application for further particularization, and if there was any procedural irregularity it did not prejudice him. See *Sullivan v. Roe,* 18 *N. J.* 156, 162

(1955); *Marro v. Civil Service Dept., supra,* 57 *N. J. Super.,* at *p.* 345.

■■ The appellant asserts that the Department failed to introduce in evidence, either the preliminary notice of disciplinary action or the final notice of disciplinary action, both of which were on forms prepared by the Commission. He contends that this omission was fatal but we find no semblance of basis for this view. The notices were duly served on the appellant, he was at all times familiar with their contents, and he was in no sense prejudiced by the fact that there was a failure to incorporate them formally in the record before the Commission. The appellant also contends that charges outside the scope of the preliminary notice were improperly considered. This has reference to the charges of injudicious conduct in *Burkley* and improper practice before the Division during the period of suspension. These charges were duly raised before Acting Commissioner Pfaus and the appellant was then advised that they would be considered and that he could introduce evidence to meet them. The appellant chose to present nothing before the Acting Commissioner on the items in question. We hold the opinion that the matters may be viewed as within the broad scope of the general charges of incompetency and inefficiency in the service (see 67 *C. J. S. Officers* § 60d(5) (1950)) and that, in any event, the original notice may be considered as having been amended or supplemented to include them specifically. On his appeal, they were part and parcel of the charges heard *de novo* by the Commission which fairly received evidence with respect to them from both the Department and the appellant. We find no prejudice here. *Cf. Stein v. Felden,* 17 *N. J. Super.* 311, 316 (*App. Div.* 1952). See *West New York v. Bock, supra,* 38 *N. J.,* at *p.* 521.

■ The appellant contends that the Commission exceeded its authority in considering the manner in which his cases were handled in the Division since his determinations were reviewable only by the courts. See *N. J. S. A.* 34:15–49; *N. J. S. A.* 34:15–66. The Commission was careful in

its decision to avoid passing on matters which were properly within the deputy director's judgment and discretion, subject to judicial review. But it could properly consider such of the appellant's conduct, both within and beyond the hearing room, as evidenced incompetency and inefficiency apart from matters properly entrusted to his judgment and discretion. That conduct furnished substantial support for the ultimate conclusion that the service ratings of unsatisfactory were not made arbitrarily and were sufficient, when coupled with *Burkley* and the practice before the Division during the period of suspension, to justify the appellant's removal. The appellant further urges that since his conduct in practicing before the Division may involve a matter of ethics, it should be considered as resting exclusively within the jurisdiction of the ethics committee and the disciplinary powers of this court. There is nothing of substance to this contention. If there is any reason for a proceeding before the ethics committee it will presumably be taken in due time; but the availability of an additional avenue of approach in nowise restricted the independent authority of the Department and the Commission to prosecute the matter as good cause for dismissal within the express terms of *R. S.* 11:15–2 *et seq.* and Rule 59.

The appellant asserts that the appointing authority acted in bad faith and that his dismissal was motivated by the desire to create a vacancy which would enable a favored appointment. He refers to procedural deficiencies of technical nature but these have no bearing on good faith and motive. We have carefully examined the voluminous testimony with full awareness of the appellant's assertion but find no real support ·for it. On the contrary, the record lends credence to the Director's position that he acted conscientiously and for the good of the service as he saw it. Not all men are intellectually and emotionally equipped for all tasks. The appellant had been appointed as deputy director without prior examination and without any special qualifications in the workmen's compensation field. When the Director learned of the inci-

dents suggestive of the appellant's failure to grasp the fundamental principles and procedures of workmen's compensation, he properly called them to his attention. When he sent the first rating of unsatisfactory, he told the appellant that he would have to do better and that two consecutive ratings of unsatisfactory may lead to dismissal.[2] Being satisfied that there had been no improvement, he sent the second rating of unsatisfactory. That his appraisal was not entirely without foundation may readily be inferred from the testimony mentioned earlier in this opinion.

The appellant's final contention, *i. e.*, that the Civil Service Commission's determination was contrary to the evidence, clearly lacks merit. The Commission received extensive testimony and rightly concluded that there had been no showing of bad faith or arbitrary action on the part of the Director. With respect to *Burkley*, it may be noted we have independently examined the record of the proceeding in the Division and subscribe to Judge Leonard's critical comments. The appellant suggests that since he has been determined not to be a part of the judicial department, he was not technically subject to the canons of judicial ethics upon which Judge Leonard relied. Those canons contain elemental guides which, even if they had never been codified into formal rules, would govern the conduct of judges in courts and triers in administrative agencies alike. The admonition that the judge be patient, considerate, courteous and attentive, and that he permit witnesses to testify and counsel to examine without his undue interference or his undue participation, has universal sweep; the Commission had ample ground for finding that it had been ignored in *Burkley*.

---

[2] The 1956 revision of the performance rating manual prepared by the Department of Civil Service contained the following provision: "Any employee in the Classified Service may be removed or demoted for inefficiency if the numerical average of his last two Performance Ratings is Unsatisfactory, subject to the provisions of *R. S.* 11 :15–1; 11 :15–4 and 11 :15–6 'Removal and Demotion.' " An identical provision is contained in the most recent (1963) revision of the manual.

 The last item referred to by the Commission was the appellant's conduct in practicing before the Division during his suspension. We take a serious view of this matter. Although the preliminary notice of disciplinary action spoke of removal pending hearing, it was, in reality, a suspension awaiting final action which could be either removal, lesser discipline, or complete vindication. See *Marro v. Civil Service Dept., supra,* 57 *N. J. Super.,* at *p.* 342; *cf. Paull v. Pierce,* 68 *N. J. Super.* 521, 530 (*Law Div.* 1961). During the period of suspension, the appellant was still a deputy director, though he was not permitted to hear or determine any workmen's compensation proceedings. It was wrong for him to represent a petitioner before the Division of which he was still a member. See *Cady v. Lang,* 95 *Vt.* 287, 115 *A.* 140 (1921); *Opinion* 142, *ABA, Committee on Professional Ethics and Grievances, p.* 300 (1957 Compilation). In his decision, Acting Commissioner Pfaus referred specifically to the impropriety of the conduct. Subsequently, Mr. Campbell arranged for a substitution of attorney in the *Fiore* matter and in November 1959 he wrote a letter advising that he had no further connection with it. But this was hardly a fair and frank statement as indicated by his later receipt of the full fee allowed by the Division to the substituted attorney. We consider that the Commission was warranted in coupling Mr. Campbell's improper activity in practicing before the Division during the period of his suspension, with the *Burkley* matter and the unsatisfactory ratings, as sufficient cause for his dismissal. *Cf. Thomas v. Ward, supra,* 225 *F. 2d* 953.

██ The purpose of our civil service law is to improve the efficiency of the public service of the State and its various subdivisions. To afford stability to that service, the law embodies tenure provisions designed to exclude considerations which are political, partisan or personal in nature. However, caution must be taken to avoid their use as a broad cover for individual incompetency or inefficiency. Here there was an express departmental finding of cause for removal which was sustained after full hearing before the Commission specially

charged with the responsibility of insuring that the civil service law is fairly administered. Judicial upsetment of that finding would be uncalled for except upon an affirmative showing of injustice. There was no such showing here. Accordingly, the action below is:

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.