**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4822-15T1

CARLOS MOORE,

    Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

    Respondent.

_____

Submitted June 8, 2017 — Decided July 11, 2017

Before Judges Lihotz and Whipple.

On appeal from New Jersey State Parole Board.

Carlos Moore, appellant pro se.

Christopher S. Porrino, Attorney General,
attorney for respondent (Lisa A. Puglisi,
Assistant Attorney General, of counsel;
Gregory R. Bueno, Deputy Attorney General, on
the brief).

PER CURIAM

    Carlos Moore, an inmate incarcerated at Bayside State Prison,

appeals from the New Jersey State Parole Board's (Board) January

27, 2016 final agency decision revoking parole and establishing a twelve-month future eligibility term (FET).  We affirm.

Moore was serving an aggregate custodial term of twelve years for carjacking, robbery, possession of a firearm, possession of a prohibited weapon, resisting arrest, unlawful possession of a weapon, possession of hollow-nosed bullets, possession of a weapon by a convicted felon, burglary, and aggravated assault.  Moore's sentence provided for eighty-five percent parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, and a five-year period of mandatory parole supervision.  Moore was also serving an additional five-year term, with a two-year, six-month mandatory minimum term for aggravated assault.  Moore was released from custody on September 25, 2013, and began parole supervision.

The Board mandated Moore comply with various conditions while on parole, including refraining from visiting establishments whose primary business is selling alcohol and prohibiting his contact with known members of the Bloods gang.  On April 14, 2014, Moore and his girlfriend, L.A., were involved in a domestic dispute, resulting in the imposition of the additional special condition Moore refrain from any contact with L.A.

Two incidents resulted in parole violations.  On April 15, 2014, a parole officer found a Bloods gang member in Moore's home during a home visit.  On January 27, 2015, officers from the

Atlantic City Police Department arrested Moore at Caesars Atlantic City Hotel and Casino (Caesars) where L.A. told the officers she and Moore had an argument and he punched her in the chin. The next day, a parole—warrant issued.

On February 2, 2015, the Board served Moore with a notice of probable cause hearing, listing his violations: failure to refrain from contact with L.A., failure to refrain from contact with known Bloods gang members, and failure to refrain from establishments in which sale of alcohol is the primary purpose. The probable cause hearing was held on May 6, 2015, where Moore proceeded prose. Moore admitting he assaulted L.A. at Caesars while there was a "no contact" condition in place. The hearing officer sustained the violation of no contact and refraining from establishments selling alcohol. As to the violation of refraining from contact with Bloods members, the hearing officer inferred Moore had knowledge of his visitor's membership in the Bloods and sustained that violation as well.

A two-member Board panel adopted the hearing officer's recommendation on June 10, 2015. On June 23, 2015, Moore's parole revocation hearing took place. The violation for failing to refrain from contact with Bloods members was withdrawn. As for the two remaining violations, Moore admitted he failed to refrain from contacting L.A. and he was at a bar in Caesars, though he

stated he was only "walking through" the bar. Based upon evidence in the record, the hearing officer found by clear and convincing evidence Moore committed the violations charged and recommended the Board revoke Moore's mandatory supervision.

On July 1, 2015, after reviewing the hearing officer's summary, a two-member Board Panel found Moore violated the special conditions of his mandatory supervision and revoked Moore's parole, imposing a twelve-month FET. Moore administratively appealed and a full Board Panel affirmed the Panel's decision on January 27, 2016.

Moore argues on appeal the Board did not follow proper procedures and violated his due process rights. He also argues the Board's findings were not supported by clear and convincing evidence. We disagree.

Our review of final decisions of administrative agencies is limited. Decisions of the Board, like those of other administrative agencies, are not reversed unless they are "arbitrary, capricious or unreasonable or [are] not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)).

Revocations of parole must be supported by clear and convincing evidence. N.J.A.C. 10A:71-7.12(c)(1). Clear and

convincing evidence is "evidence upon which the trier of fact can rest 'a firm belief or conviction as to the truth of the allegations sought to be established.'" In re Registrant R.F., 317 N.J. Super. 379, 384 (App. Div. 1998) (quoting In re Purrazzella, 134 N.J. 228, 240 (1993)). Evidence must be "so clear, direct and weighty and convincing as to enable [factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." In re Seaman, 133 N.J. 67, 74 (1993) (quoting In re Boardwalk Regency Casino License Application, 180 N.J. Super. 324, 339 (App. Div. 1981), modified, 90 N.J. 361 (1982)).

Our review of the record finds support for the Board's determination Moore's violations were established by clear and convincing evidence. As a condition of parole, Moore was to refrain from frequenting any establishment whose primary purpose was to sell alcohol. Moore admitted to being in a casino bar, however, he argues he was simply "walking through" and a casino's primary purpose is entertainment, not selling alcohol. We find this argument to be without merit. Moore acknowledged he was in the casino bar around the time of the altercation with L.A.

As for the condition requiring Moore have no contact with L.A., the record clearly establishes Moore continued to have contact with L.A., as Moore admitted being with her on three

separate occasions, including the trip to Atlantic City where he assaulted her. By his own admission, Moore knew he was to refrain from contacting L.A., yet continued to see her.

Moore argues the Board failed to consider the progress he has made since being released from prison. Moore's progress reports were included as evidence when the hearing officer and the Board made its decision regarding the revocation of Moore's parole. Moore's progress during his release does not change the disposition; he clearly violated the special conditions of his parole, which he himself admits.

Moore argues the Board did not follow the proper procedures. Moore first argues the imposition of the special condition regarding L.A. was done without due process, as Moore was never charged in the domestic dispute that led to the imposition of the special condition. The special condition was imposed to prevent any further criminal behavior and Moore never appealed the imposition of this special condition as imposed. We do not find the special condition ordering him to refrain from contact with L.A. violated Moore's due process rights.

As to Moore's general assertion he was denied procedural due process we note, an inmate's due process rights in a final parole revocation hearing were established in Morrissey v. Brewer, 408

U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Those rights include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
>
> [Id. at 499.]

The Morrissey requirements were met in this case. The first and second requirements were satisfied when Moore was served with the notice of probable cause hearing, which stated the alleged violation. Moore was present at the hearing and testified on his own behalf, satisfying the third requirement. Moore was given the opportunity to confront the adverse witness who testified against him, satisfying the fourth requirement. The revocation hearing was conducted by a designated representative of the Board and is neutral and detached; satisfying the fifth requirement. The hearing officer issued a written opinion identifying the evidence relied upon and the reasons why Moore's parole was revoked, satisfying the final Morrissey requirement. The Board followed

proper procedure revoking Moore's parole; thus, the decision was not arbitrary or capricious.

Lastly, Moore argues the Board did not conduct the parole board hearing in a timely fashion. N.J.A.C. 10A:71-4.2(a) provides the Board must decide appeals within ninety days of receiving them. Here, the Board received Moore's appeal on October 14, 2015, and issued a final determination on January 27, 2016. The Board did not comply with the ninety day requirement of N.J.A.C. 10A:71-4.2(a), however Moore suffered no prejudice by the fifteen-day delay in the final decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4822-15T1