**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5159-17T1

C.N.,

      Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF HUMAN SERVICES,

      Respondent-Respondent.

_____

Submitted December 17, 2019 – Decided February 7, 2020

Before Judges Accurso and Gilson.

On appeal from the New Jersey Department of Human Services, Docket No. 13-108.

Testa Heck Testa & White, PA, attorneys for appellant (Michael L. Testa, of counsel and on the briefs; Anthony Mario Imbesi, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

PER CURIAM

This is the second appeal by petitioner C.N. from final agency decisions by the Department of Human Services (Department), placing her on the Central Registry of Offenders against Individuals with Developmental Disabilities (Central Registry).[1] On the first appeal, we reversed and remanded because the Department provided insufficient explanations for rejecting and modifying the initial decision of the Administrative Law Judge (ALJ). On remand, the Department conducted a detailed review of the record and provided a detailed explanation of why it rejected the ALJ's findings and the facts and law supporting its decision. Given our limited scope of review, we discern no basis for rejecting the agency's second decision and affirm.

I.

We described the facts in our first opinion and, thus, will only summarize some of the relevant facts. See C.N. v. N.J. Dep't of Human Servs., No. A-1841-15 (App. Div. Jan. 9, 2018).

Petitioner is a registered nurse who worked for a group home operated by Elwyn New Jersey. On October 20, 2012, petitioner was the on-duty nurse at a home where S.K. was a resident. S.K. had developmental disabilities and

---

[1] To protect the identity of the individuals, we refer to them by their initials. R. 1:38-3(f)(8).

medical conditions for which she was prescribed a number of medications. Those medications included Dilantin, which S.K. was to receive three times a day, to treat a seizure disorder. Petitioner knew S.K. needed to receive her Dilantin as prescribed because petitioner had been informed that S.K. had been hospitalized five days earlier for "ambulatory dysfunction" caused by "sub-therapeutic Dilantin levels."

At approximately 4 p.m., petitioner attempted to give S.K. her 4 p.m. dose of Dilantin, but S.K. spit the medicine out. Petitioner did not immediately give S.K. another dose of Dilantin. Instead, at approximately 6 p.m., petitioner put a dose of Dilantin in pudding, gave the pudding to S.K., but did not confirm that S.K. ate the pudding with the medicine.

Petitioner failed to note that S.K. had not taken her 4 p.m. dose on her Medication Administration Record (MAR). Petitioner also pre-marked the MAR to state that S.K. had received her Dilantin doses at their prescribed times and that S.K. had been given other medications at their prescribed times.

After giving S.K. the pudding at approximately 6 p.m., petitioner attended to other residents and went to the restroom. Shortly thereafter, S.K. became unresponsive, and when petitioner could not be immediately located, a worker

at the home called 911.  Emergency medical technicians (EMTs) responded to the home to attend to S.K.

The EMTs evaluated S.K., found her vital signs normal, but noted she was lethargic.  Accordingly, the EMTs took S.K. to the hospital for further evaluation.  At least one of the EMTs also reviewed S.K.'s MAR.  At the hospital, S.K. was diagnosed with Dilantin deficiency and she was given the medication intravenously.

At approximately the time that the EMTs arrived, petitioner was located, she came to S.K.'s room, and was present for some of the time that the EMTs were attending to S.K.  Petitioner did not inform the EMTs that S.K.'s MAR was inaccurate in that S.K. had not taken her 4 p.m. dose of Dilantin and that other medications, which were scheduled to be dispensed at 8 p.m. and "bedtime," were marked as having been given even though they had not been administered to S.K.

In August 2013, the Department notified petitioner that her name would be placed on the Central Registry.  Caregivers on the Central Registry may not be employed by facilities or programs providing services to individuals with developmental disabilities operated by or receiving funding from the Department.  N.J.S.A. 30:6D-77(c)(3); N.J.A.C. 10:44D-1.1(b).

Petitioner challenged her placement on the Central Registry and the matter was transmitted to the Office of Administrative Law. After conducting a hearing, an ALJ issued an initial decision reversing the placement and dismissing the Department's action. On further administrative appeal, the Department rejected the ALJ's initial decision and, on November 20, 2015, the Department issued its first final agency determination that petitioner had been grossly negligent and placing her on the Central Registry.

Petitioner appealed to us and we reversed and remanded the matter to the Department. C.N., slip op. at 10, 13. In our initial decision, we determined that the Department failed to explain its findings and, accordingly, those findings and conclusions were arbitrary and capricious. We remanded the matter to the Department with the direction that "the Department must determine whether petitioner (1) acted with gross negligence or recklessness as defined in N.J.A.C. 10:44D-4.1(c); and, if so, (2) whether the evidence in the record supports a finding that her actions actually harmed S.K. or placed S.K. in harm's way." Id. at 13.

On remand, the Department conducted a review of the entire administrative record. The Department then issued a thirteen-page, single-spaced written "REVISED" final agency decision dated May 29, 2018. That

A-5159-17T1

decision detailed (1) the perceived errors in the ALJ's initial decision; (2) the facts established by the record, including many material facts testified to by petitioner; and (3) the governing law and regulations.

The Department first found that petitioner (1) never administered S.K. her prescribed 4 p.m. dose of Dilantin; (2) incorrectly recorded on S.K.'s MAR that she had received her 4 p.m. dose; (3) never confirmed that S.K. ingested her 8 p.m. dose of Dilantin, which was put in pudding at approximately 6 p.m.; (4) inaccurately recorded on S.K.'s MAR that S.K. had received all her 8 p.m. and "bedtime" medications, including Dilantin; and (5) never told the EMTs or followed up with the hospital to let them know that S.K.'s MAR was inaccurate and S.K. had not received all her prescribed Dilantin.

The Department also found that petitioner's actions and omissions put S.K. in harm's way. In making that finding, the Department relied on the hospital records that showed S.K. was tested for and diagnosed with Dilantin deficiency. The Department also relied on petitioner's testimony, as a registered nurse, that S.K. needed to receive her prescribed doses of Dilantin to protect against seizures. The Department also found that the record established that petitioner knew S.K. had just returned from a hospitalization for low Dilantin levels.

In summary, the Department found that petitioner had acted with gross negligence and recklessness and her actions and omissions placed S.K. in harm's way. Petitioner now challenges the Department's revised final agency decision issued on May 29, 2018.

II.

In this second appeal, petitioner argues that (1) the final agency decision is not supported by credible evidence in the record; and (2) the Department did not meet its burden to prove that petitioner should be placed on the Central Registry. We are not persuaded by these arguments and affirm because the Department complied with our remand instructions and the facts and law support the Department's determination.

Our review of an agency's final decision is limited. Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009); In re Carter, 191 N.J. 474, 482 (2007) (citing Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186 N.J. 5, 15-16 (2006)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks [factual] support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)). An agency's interpretation of a statute or case law,

however, is subject to de novo review. Russo v. Bd. of Trs. Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). Thus, in reviewing an agency's decision, we also examine whether the agency erred in applying "the law to the facts." Twp. Pharmacy v. Div. of Med. Assistance & Health Servs., 432 N.J. Super. 273, 283-84 (App. Div. 2013) (citing In re Stallworth, 208 N.J. 182, 194 (2011)).

An agency can reject and modify an ALJ's initial decision, but its authority to do so is limited. Specifically, regulations require that when an agency rejects an ALJ's decision, it must clearly state the basis for that rejection, and it must cite specific evidence supporting the agency's final decision and interpretation of the law. N.J.A.C. 1:1-18.6(b).

A caregiver can be placed on the Central Registry if he or she acts with "gross negligence, recklessness or evidenced a pattern of behavior that caused harm to an individual with a developmental disability or placed that individual in harm's way." N.J.A.C. 10:44D-4.1(c). Gross negligence is a "conscious, voluntary act or omission in reckless disregard of a duty and of the consequences to another party." N.J.A.C. 10:44D-4.1(c)(1). Recklessness "is the creation of a substantial and unjustifiable risk of harm to others by a conscious disregard for that risk." N.J.A.C. 10:44D-4.1(c)(2).

Following our remand, the Department reviewed the testimony and documents in the administrative record and found that petitioner was grossly negligent and reckless in (1) improperly dispensing medications to S.K.; (2) inaccurately recording information on S.K.'s MAR; and (3) failing to inform the EMTs or hospital that S.K.'s MAR was inaccurate. Those findings are supported by substantial credible evidence in the record.

In addition, the Department found that S.K. was placed in harm's way as a result of petitioner's gross negligence and recklessness. In making that determination, the Department relied on the uncontroverted facts that S.K. had a seizure disorder, petitioner knew that it was important for S.K. to receive her Dilantin medication as prescribed, and that low levels of Dilantin could result in hospitalization. Again, those facts are supported by substantial credible evidence in the record.

In summary, the Department's revised final agency decision issued on May 29, 2018, complied with our remand instructions, and identified facts supporting that petitioner acted with gross negligence and recklessness that placed S.K. in harm's way. The Department also supported its determination to

place petitioner on the Central Registry by citing to the governing law and regulations.  See N.J.S.A. 30:6D-73, -77; N.J.A.C. 10:44D-1.1 to -7.2.[2]

Petitioner also argues that the Department unfairly shifted its focus.  She contends that before the ALJ, the accusation against her was that she had over-medicated S.K.  She complains that the Department changed that focus in its revised decision and found that she had under-medicated S.K.  Our review of the first and revised decisions by the Department satisfies us that the Department appropriately considered the potential harm both from over-medication and under-medication.  Accordingly, we find no basis for reversing the Department on this alleged shift of focus.

Finally, we acknowledge petitioner's legitimate argument that placing her on the Central Registry could be perceived as a harsh result.  Petitioner has been a registered nurse since 2004.  The Department did not cite to or rely on any alleged negligence apart from the incident involving S.K.  At the time that incident occurred, petitioner was the only nurse on duty responsible for sixteen

---

[2]  In the Department's brief submitted on the second appeal, counsel suggested that the showing of harm or potential harm is "legally immaterial" because the focus should be on the caregiver.  We read the Department's revised final decision to have found a potential harm to S.K.  Accordingly, we do not rely on, and do not accept, the Department's contention that the Department need not prove harm or a potential for harm.

residents of a group home. S.K was in a weakened condition having just returned from a hospitalization. Petitioner attended to S.K. but was then called away to deal with other residents. While there is sufficient evidence to support the Department's determination that petitioner acted with gross negligence and recklessness, fortunately, S.K. was not substantially harmed. Moreover, the acts and omissions by petitioner were all committed during a brief, and arguably hectic, period of time. Consequently, reasonable people could question the utility and fairness of prohibiting petitioner from continuing to serve as a nurse to all persons with developmental disabilities. All that said, such a determination is the responsibility of the Department, and it is not within our purview to second guess that judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION