592 A.2d 265

NEW JERSEY HOSPITAL ASSOCIATION, PLAINTIFF–APPELLANT, v. NEW JERSEY STATE DEPARTMENT OF HEALTH, FRANCES DUNSTON, M.D., M.P.H., COMMISSIONER OF THE DEPARTMENT OF HEALTH; HOSPITAL RATE SETTING COMMISSION; KATHLEEN BRENNAN, ACTING ADMINISTRATOR OF THE NEW JERSEY UNCOMPENSATED CARE TRUST FUND; IN HER OFFICIAL CAPACITY; AND THE NEW JERSEY UNCOMPENSATED CARE TRUST FUND, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 22, 1991—Decided June 14, 1991.

Before Judges LONG, R.S. COHEN and STERN.

*Frank R. Ciesla* argued the cause for appellant (*Giordano, Halleran & Ciesla*, attorneys; *Frank R. Ciesla*, of counsel; *Elizabeth Dusaniwskyj*, on the brief).

*Michael J. Haas*, Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo*, Attorney General, attorney; *Mary C. Jacobson*, Deputy Attorney General, of counsel; *Michael J. Haas*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Plaintiff New Jersey Hospital Association (hereinafter the "Association") filed a verified complaint in the Law Division seeking an order compelling payments out of the New Jersey

Uncompensated Care Trust Fund to certain hospitals which previously received such funds pursuant to statute. The Association also sought an order restraining defendants from "utilizing the monies remaining in the Trust Fund for any purpose other than the making" of such payments.

The matter was transferred here pursuant to *R.* 1:13–4(a).

On emergent application before us on February 26, 1991, we restrained the State

> from utilizing the monies remaining in the New Jersey Uncompensated Care Trust Fund for any purpose other than the making of scheduled payments to hospitals pending disposition of this appeal....

We also accelerated briefing and oral argument.

## I.

The New Jersey Uncompensated Care Trust Fund ("Fund") was enacted on January 5, 1987 as a supplement to the Health Care Facilities Planning Act ("Act"), *N.J.S.A.* 26:2H–1 to –26.[1] The purpose of the Fund was to insure that health care would not be denied to residents who otherwise cannot afford it. See *L.* 1986, *c.* 204, § 1. *See also N.J.S.A.* 26:2H–18.4 (expired). The Fund was established to require that "all payers of health care services share in payment of uncompensated care on a Statewide basis." *L.* 1986, *c.* 204, § 1. *See also N.J.S.A.* 26:2H–18.4a (expired). We are told that prior to the establishment of the Fund, each individual hospital's rates included the costs of recovery for uncompensated care at that hospital. Thus, hospital rates were significantly higher for those hospitals which had a greater amount of uncompensated medical expenses, those hospitals usually being in the urban communities. *See Matter of Schedule of Rates for Barnert Memorial*

---

[1] The Fund was created by L.1986, c. 204. Because the Act expired on December 31, 1988 pursuant to L.1986, c. 204, § 15, it can be found in codified form only in its subsequent form as adopted pursuant to L.1989, c. 1. *See N.J.S.A.* 26:2H–18.4 to –18.23 which expired on December 31, 1990. *See* historical note to *N.J.S.A.* 26:2H–18.4 (expired). Our references to the codification are to the 1989 statute, now expired.

*Hospital*, 92 *N.J.* 31, 36, 455 *A.*2d 469 (1983) (noting that the Health Care Facilities Planning Act as amended in 1978 endeavored to address this problem).

The Fund was comprised of "monies collected from hospitals pursuant to [the statute as well as] monies appropriated from the General Fund" by the Legislature. *L.* 1986, *c.* 204, § 4a. *See also N.J.S.A.* 26:2H–18.7(a) (expired). For rate periods beginning January and July of each year, the Department of Health was to determine "a uniform Statewide uncompensated care add-on", or uniform surcharge to be "included in hospital rates." *L.* 1986, *c.* 204, § 6; *N.J.S.A.* 26:2H–18.9a (expired). The amount of the "add-on" was determined "by dividing the Statewide amount of approved uncompensated care plus an amount adequate to repay any direct appropriation of State funds ... and to fund the reasonable cost of administering the fund ... and maintaining the reserve pursuant to [the A]ct, by the Statewide amount of approved revenue for all payers and approved revenue for medically indigent persons less the Statewide amount of approved uncompensated care." *L.* 1986, *c.* 204, § 6. *See also N.J.S.A.* 26:2H–18.9a (expired). The amount of the "add-on" was to be approved by the Hospital Rate Setting Commission ("Commission") before it was included in hospital rates. *L.* 1986, *c.* 204, § 6; *N.J.S.A.* 26:2H–18.9a (expired).

The Commission was also directed to approve the amount of each hospital's uncompensated care. *L.* 1986, *c.* 204, § 7a; *N.J.S.A.* 26:2H–18.10a (expired). The Fund was also required to "maintain a reserve equal to 1/12 of the fund's total estimated annual payment for uncompensated care costs for the prior calendar year." *L.* 1986, *c.* 204, § 4; *N.J.S.A.* 26:2H–18.7e (expired).

"[A] hospital whose uncompensated care costs [were] lower than the amount the hospital [received] from the uniform Statewide uncompensated care add-on [was required] to remit the net difference to the fund" (as a paying hospital). *L.* 1986,

c. 204, § 7b; *N.J.S.A.* 26:2H–18.10b (expired). Conversely, "a hospital whose uncompensated care costs [were] higher than the amount the hospital [received] from the uniform Statewide uncompensated care add-on [was] to receive the net difference from the fund" (as a receiving hospital). *Id.* The Act further provided that the hospitals required to remit money to the Fund were to do so "in equal installments at the end of every month," and hospitals entitled to receive payments from the Fund were to "receive the payments on a monthly basis." *L.* 1986, *c.* 204, § 8a, c; *N.J.S.A.* 26:2H–18.11a, c (expired). The regulations promulgated pursuant to the Act provided that the Fund was required to make payments to "receiving hospitals" on the 15th of every month; and "paying hospitals" were required to remit funds as required by the Act, on the last banking day of every month. *N.J.A.C.* 8:31B–7.4. *See also L.* 1986, *c.* 204, § 11; *N.J.S.A.* 26:2H–18.22 (expired).

The Legislature appropriated $10,000,000 to provide initial funding for the Fund and $5,000,000 to establish the Fund's reserve. *L.* 1986, *c.* 204, § 14. The original Act also provided that "[p]rior to the expiration date of this Act, the Fund shall repay the State the total amount of any direct appropriations of State funds made to the Fund pursuant to this Act." *L.* 1986, *c.* 204, § 12.

The original Act expired on December 31, 1988. *L.* 1986, *c.* 204, § 15. However, on January 11, 1989, the Fund was retroactively extended for a two-year period through December 31, 1990. *L.* 1989, *c.* 1, § 1; *N.J.S.A.* 26:2H–18.4 to –18.23 (expired). *See also* historical note to *N.J.S.A.* 26:2H–18.4 (expired) (West Pocket Part 1990–1991). In its findings and declarations, the Legislature recognized that it was necessary to continue the Fund "to ensure access to hospital care for those who cannot afford to pay," but found that "further actions" were necessary "to reduce the amount of uncompensated care in this State without impairing access to care." *N.J.S.A.* 26:2H–18.4e (expired). Significantly, the 1989 legislation provided that the Fund was "not required to repay the General

Fund any portion of the direct appropriation of State funds made pursuant to *P. L.* 1986, *c.* 204, [§ 12] that is remaining in the fund as of December 31, 1988", the original expiration date. *N.J.S.A.* 26:2H–18.17 (expired). The statute also provided in the same subsection that the amounts

> remaining in the fund shall be credited to a special account to be known as the 'Uncompensated Care Reduction—Pilot Program' account and shall be used to subsidize or otherwise provide financial assistance for a health insurance pilot program for small businesses; except that the monies, and any interest earned thereon shall remain in the account until such time as a law is enacted which establishes the health insurance pilot program for small businesses and which appropriates the monies in the account. [*N.J.S.A.* 26:2H–18.17 (expired)].

The statute further provided, as did its predecessor, that the Fund was required to "maintain a reserve equal to $\frac{1}{12}$ of the fund's total estimated annual payment for uncompensated care costs for the prior calendar year." *N.J.S.A.* 26:2H–18.7 (expired).

The Trust Fund provisions expired on December 31, 1990 and the legislation has not been renewed.[2] After the expiration date of the Act, hospitals were permitted to utilize the pre–Fund manner of collection for uncompensated care costs. Each hospital is thus permitted to add an approved surcharge to that hospital's bills to include its uncompensated care. As a result, rather than obtaining payments from the Fund, since January 1, 1991, hospitals are to include uncompensated care as part of their approved hospital rates.[3]

---

[2]We are told that various bills have been introduced with respect to the Fund. The parties do not anticipate that any particular bill will be enacted shortly.

[3]We are told that the result of resorting to this system has been that rates at urban hospitals and other locations where there are "pockets of indigents" are significantly higher than those at suburban hospitals which have fewer patients and a lower amount of uncompensated care. We are also told that some third party payers and others are now trying to have their insureds use only the hospitals with less uncompensated costs, so that they can get the benefit of the lower rates.

On Thursday, January 17, 1991, the Fund made payments to the "receiving hospitals" in the normal course. The Department also collected the payments from "paying hospitals" on January 31, 1991. No payment was made from the Fund, however, commencing in February, 1991.

The Association filed its complaint seeking to compel the State to make the February 15, 1991 payment from the Fund and, if a balance remained, to make a payment on March 15, 1991. By virtue of the January 31, 1991 payment into the Fund, we are told that the balance is now approximately $22,000,000. As the January 17, 1991 payment was approximately $18,469,000, the Association claims that there is a sufficient amount to make a payment for February with a surplus left over.

In her findings of fact and conclusions of law prepared pursuant to *R.* 2:5–1(b), the Commissioner explained that the February 15 payment was not made because the legislation had expired and that she therefore had no authorization to make it. She also denied further payments to the hospitals out of the Fund because as of January 1, 1991 "the hospitals have been obtaining payment through their specific approved hospital rates" which include assessments to all patients for uncompensated care. She said that each hospital's rates have been adjusted "to include their individual costs of uncompensated care."

The Commissioner emphasized as part of her conclusion that the Fund was implemented by an initial payment to the "receiving hospitals" before anything was paid to the Fund by the "paying hospitals." She said that "hospitals paying into the Fund remained one month behind.... [B]ecause hospitals paying monies into the Fund had always been one month behind in their payments, these hospitals were required to fulfill their remaining obligation under the legislation and to make their final payment to the Fund on January 31, 1991." She further noted that the first payment was made from the State's initial

appropriation and the monthly cycle must be deemed to end with a collection from the hospitals. Moreover, she deemed it significant that the Legislature contemplated that a balance would remain at the time of expiration because of the provision of *N.J.S.A.* 26:2H–18.7c (expired) relating to the required reserve and because of the specific provisions addressed to that subject as of December 31, 1988.[4]

The Commissioner rejected as irrelevant the Association's contention that the payment was necessary to ease cash flow problems, and also found that the Association's concerns about the amount of time necessary to collect bills was unpersuasive. In essence, the Commissioner denied the Association's request on behalf of the hospitals that all remaining monies in the Fund be paid to hospitals which previously received them.[5]

We agree with the Commissioner that, although the legislation had expired on December 31, 1990, a payment to "receiving hospitals" could be made on January 17, 1991 due to the mechanism that was set up in 1987 when the legislation was enacted. That is, as payments had to be made into the Fund on January 31, 1991 due to the "add-on" rates included in billings through December, the Fund had to make its January payment as part of the cycle. The Commissioner appropriately reasoned that the monthly cycles had to continue until terminated in an orderly fashion, which included collection from the "paying hospitals" for their "add-ons" collected for services through December, 1990. We therefore also agree with the Commissioner that as the hospitals were historically one month behind in their payments, the January 31, 1991 payments could be collected by the Fund.

---

[4]The Commissioner did not expressly state and does not argue that she reads *N.J.S.A.* 26:2H–18.17 (expired) to govern the present balance, as opposed to the balance as of December 31, 1988. In fact, at oral argument we were told that the balance as of December 31, 1988 and the required $\frac{1}{12}$ reserve had to be isolated from the remaining balance.

[5]There is no standing issue raised.

The Association does not challenge the payment of January 17 or the collection of January 31, 1991. Rather, the Association argues that once the State acted beyond the expiration date, it was required to exhaust the balance of the Fund in a similar fashion.

We agree with the Association that the statute does not expressly mandate that the excess funds must remain in the Fund until the Legislature provides direction for its use. The statute requires only that the Fund retain an amount equal to ¹⁄₁₂ of the Fund's total estimated annual payment for uncompensated care costs for the prior calendar year. *N.J.S.A.* 26:2H–18.7c (expired). However, the present balance is substantially higher than that, and the parties before us have agreed that the necessary reserve has been isolated—as has the money necessary for the small business health care pilot program required by *N.J.S.A.* 26:2H–18.7a (expired), that is the amount remaining in the Fund as of the date of its initial expiration date of December 31, 1988. *See also . N.J.S.A.* 26:2H–18.7a (expired).

*N.J.S.A.* 26:2H–18.17 (expired) provided:

> The administrator of the fund is not required to repay to the General Fund any portion of the direct appropriation of State funds made pursuant to *P.L.* 1986, c. 204 that is remaining in the fund *as of December 31, 1988.*
>
> The amounts remaining in the fund shall be credited to a special account to be known as the "Uncompensated Care Reduction—Pilot Program" account and shall be used to subsidize or otherwise provide financial assistance for a health insurance pilot program for small businesses; except that the monies, and any interest earned thereon, shall remain in the account until such time as a law is enacted which establishes the health insurance pilot program for small businesses and which appropriates the monies in the account. (emphasis added).

The State does not contend that the present balance (above that as of December 31, 1988) must be held in reserve for the "pilot program." The Association and Commissioner agree that the "pilot program" to be funded from the reserve under *N.J.S.A.* 26:2H–18.17 (expired) relates only to the Fund balance as of the initial expiration date on December 31, 1988. Hence, the dispute only relates to whether there should have been a February 15, 1991 or a February 15 and March 15, 1991 distribution out

of the balance (that is of the amount above the aggregate of the 1/12 reserve mandated by *N.J.S.A.* 26:2H–18.7c (expired) and the balance as of December 31, 1988). The Commissioner claims that she cannot make any further distribution until the Legislature acts. She does not propose to use the funds in the interim.

The Commissioner's interpretation of the law regarding a statutory Fund she administers is usually entitled to deference. *See e.g. Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327, 478 *A.*2d 742 (1984); *Mayflower Securities Co. v. Bureau of Securities,* 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973). However, where as in this case we are dealing purely with a question of statutory interpretation or legislative inaction, such deference is not applicable, *Mayflower Securities Co., supra,* and we must reject a major premise of her legal analysis.

As noted, the Commissioner's findings repeatedly emphasize the cyclical nature of the process starting with payments to the hospitals based on the appropriations for that purpose. However, the 1989 extender provided that the initial appropriations did not have to be repaid. *N.J.S.A.* 26:2H–18.17 (expired). Hence, there was no longer a need to collect the funds to repay the State's General Fund as initially directed by *L.* 1986, *c.* 204 § 12. At oral argument before us, the parties agreed that the General Treasury had been repaid, although they noted that they could find no evidence to support that fact—which may be explained by the fact it did not have to be repaid at all as a result of the 1989 extender. *N.J.S.A.* 26:2H–18.17 (expired). In any event, the Attorney General candidly agrees that no State appropriation to the Fund need now be repaid. Further, unlike its direction in *N.J.S.A.* 26:2H–18.17 (expired), the Legislature has given no express direction regarding how to distribute the reserve upon the program's expiration as of December 31, 1990.

We cannot upset the determination of an agency unless it is arbitrary, capricious or unreasonable, or violates legislative

policies expressed or implied in the legislation governing the agency. *Campbell v. Dept of Civil Service*, 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963). Based on the lack of legislative expression we cannot conclude that the Commissioner's initial determination not to distribute the funds was unreasonable. To await legislative action was prudent. Further, despite the provisions of *N.J.S.A.* 26:2H–18.22 (expired) stating that the regulations adopted under the Fund Act "shall remain in effect until they are amended or repealed pursuant to this act," we reject the Association's contention that the Fund regulations can be utilized as a substantive basis to authorize distribution even though the legislative authorization has expired. Once the statute authorizing regulation has expired, the statute is no longer in effect. *Cf. N.J. Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 562, 384 *A.*2d 795 (1978).

However the Legislature cannot be understood to have wanted millions of dollars to remain unused for the benefit of our citizens in these times. The Association acknowledges that the Legislature has the right to determine how the monies should be used. It claims no vested right to the balance on behalf of its members. The Association believes that the Legislature has decided not to exercise any further right and that distribution in accordance with its previously expressed intent is warranted. Even if we were dealing with a constitutional deprivation, which we are not, we would ordinarily give the Legislature a reasonable opportunity in which to act. *See Robinson v. Cahill*, 69 *N.J.* 133, 145–147, 351 *A.*2d 713 (1975); injunction ordered if no timely action taken, 70 *N.J.* 155, 161, 358 *A.*2d 457 (1976); injunction dissolved, 70 *N.J.* 464, 360 *A.*2d 400 (1976). That is not to say, however, that we will abdicate our responsibility to resolve disputes. *Id.* We will order a distribution only if the legislature declines to act within a reasonable time and defers to our interpretation of its probable intent.

Given the purpose for which the Fund legislation was enacted, which was to ease the burden of uncompensated care, and given the lack of legislative expression regarding the use of

monies remaining in the Fund upon its expiration, we conclude that the balance of the Fund (excluding the reserve for the "pilot program" and the mandated $\frac{1}{12}$ reserve) is to be distributed to the "receiving hospitals" in the proportion they received payments on January 17, 1991. However, we stay our mandate until December 15, 1991 to permit the enactment of legislation to otherwise control the distribution of these funds. Until enactment of the legislation or December 15, 1991, our injunction preventing distribution from the Fund (which the Commissioner has not opposed pending legislation) shall continue in force and effect.

It is so ordered.