**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5605-17T2

IN THE MATTER OF
JASEN MITCHELL,
BOROUGH OF WILDWOOD
CREST, DEPARTMENT OF
PUBLIC SAFETY.

_____

Submitted October 19, 2020 – Decided December 1, 2020

Before Judges Messano and Smith.

On appeal from the New Jersey Civil Service Commission, Docket No. 2013-618.

Fusco & Macaluso Partners, LLC, attorneys for appellant Jasen Mitchell (Amie E. DiCola, on the brief).

Blaney & Karavan, PC, attorneys for respondent Borough of Wildwood Crest (Kyle D. Weinberg, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Civil Service Commission (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

After being injured while on duty as an emergency medical technician (EMT) for the Borough of Wildwood Crest (the Borough) in 2010, and following two surgeries on his knee, appellant Jasen Mitchell reached the maximum level of rehabilitation before being medically cleared for "modified duty." The physical restrictions placed on Mitchell made it impossible for him to perform the duties of an EMT, and the Borough offered him another newly created position as a police dispatcher at a higher salary and with the same benefits and seniority rights.[1] The new position required Mitchell to attend training sessions which were scheduled at the Borough's expense. Mitchell failed to appear for the training, without excuse and without the Borough's approval.

The Borough filed a preliminary notice of disciplinary action, charging Mitchell with "resignation not in good standing." See N.J.A.C. 4A:2-6.2. After a departmental hearing, the Borough filed a final notice of disciplinary action, removing Mitchell from his position. He appealed to the Civil Service Commission (CSC), which forwarded the matter to the Office of Administrative Law and a hearing before an administrative law judge (ALJ).

---

[1] The new position was officially titled, "Public Safety Telecommunicator," within the police department.

A-5605-17T2

After considering the testimony and evidence, the ALJ concluded the Borough had proven by a preponderance of the evidence that Mitchell's "absence from training effectuated a resignation not in good standing." See N.J.A.C. 4A:2-6.2(b) ("Any employee who is absent from duty for five or more consecutive business days without the approval of his or her superior shall be considered to have abandoned his or her position and shall be recorded as a resignation not in good standing."). The CSC accepted and adopted the findings and conclusions of the ALJ and, in its final agency action, found the Borough's action "in removing and resigning [Mitchell] not in good standing was justified." This appeal followed.

Before us, in a single point, Mitchell contends the ALJ's decision "was manifestly mistaken, not supported by the record," and the Borough "failed to meet its burden of proof[.]"[2] We disagree and affirm.

---

[2] The agency head reviews an initial decision "de novo . . . based on the record" before the ALJ. In re Parlow, 192 N.J. Super. 247, 248 (App. Div. 1983). We, in turn, review the agency's final decision, not the initial decision of the ALJ. See R. 2:2-3(a)(2) (granting the Appellate Division exclusive jurisdiction to review as of right any appeal from "final . . . actions of any state administrative agency or officer"); King v. N.J. Racing Comm'n., 103 N.J. 412, 420 (1986) ("[W]hile the OAL is possessed of significant authority in the actual conduct of administrative hearings in contested cases on behalf of administrative agencies, the agency itself retains the exclusive right ultimately to decide these cases." (citing In re Uniform Admin. Procedure Rules, 90 N.J. 85, 96 (1982)),

A strong presumption of reasonableness attaches to the CSC's decision and our review is limited. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001). We "do not ordinarily overturn such a decision 'in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence[.]'" In re Carter, 191 N.J. 474, 482 (2007) (quoting Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)). We may not substitute our judgment for that of the agency when "substantial credible evidence supports [the] agency's conclusion[.]" Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citing Clowes v. Terminix Int'l Inc., 109 N.J. 575, 587 (1988)).

One of the CSC's enumerated powers is to render the final administrative decision on the "removal" of "permanent career service employees," such as Mitchell. N.J.S.A. 11A:2-6(a)(1). Our deference to agency decisions applies to the review of disciplinary sanctions imposed by the CSC. In re Hendrickson, 235 N.J. at 160–61. "[W]hen reviewing administrative sanctions, 'the test . . . is whether such punishment is so disproportionate to the offense, in light of all the

superseded by statute on other grounds, In re Hendrickson, 235 N.J. 145, 158 (2018)).

circumstances, as to be shocking to one's sense of fairness.'" In re Herrmann, 192 N.J. 19, 28–29 (2007) (quoting In re Polk, 90 N.J. 550, 578 (1982)).

In his initial decision, the ALJ recited the testimony from the Borough's witnesses detailing the circumstances surrounding the offer of the police dispatcher's position to Mitchell, and their understanding that he would appear for the scheduled training. The Borough administrator, Kevin Yecco, acknowledged receiving Mitchell's May 30, 2012 letter right before the training commenced. The letter said Mitchell was applying for an accidental disability pension, and pending approval of retirement, he would "remain on sick leave[.]" Yecco testified that the Borough would not approve Mitchell's disability pension because his doctor certified that Mitchell was not "totally and permanently incapacitated." The ALJ noted Yecco's testimony that he observed Mitchell "lifting heav[y] lighting and sound equipment" at a local school on the very day he was to begin the training.

The ALJ also cited the testimony of Neil Young, the Borough's former chief financial officer, who met with Mitchell, the chief of police, and Yecco. Young returned Mitchell's application for accidental disability pension benefits to the Division of Pension and Benefits stating Mitchell was not qualified because he was "not totally and permanently disabled." Young believed

Mitchell had expressed some concerns about the dispatcher position, but "subsequently accepted" the offer.

The ALJ recounted Mitchell's testimony, and the claim that he "never accepted the position and . . . would let [the Borough] know." He noted Mitchell's contention that "he did not go to training because he did not want to go and . . . rejected the job to pursue his pension claim." The ALJ observed that Mitchell believed an accidental disability pension would cost the Borough "'one[-]to[-]two million dollars' over the course of his life[,]" and the job offer of a dispatcher's position was a scam.

In his findings of fact which were adopted by the CSC, the ALJ noted "the underlying facts . . . [were] somewhat uncontested[,]" in that Mitchell was "injured and offered the job of dispatcher." The ALJ, however, focused on "the divergence [of] explanations on how it was offered and why [Mitchell] failed to show for the training." In this regard, the ALJ found the Borough's witnesses were "especially credible and persuasive," and Mitchell's "explanation . . . lack[ed] credibility." The ALJ found Mitchell "was evasive and condescending in the tone of his testimony as well as sarcastic." He rejected Mitchell's claims of being "bullied by the Borough in[to] taking the dispatcher job[,]" and the ALJ found Mitchell's "conspiracy theory . . . against him . . . fell short on

believability."  The ALJ agreed that Mitchell's decision to file an application for disability retirement pension benefits did not excuse his five-day absence from the required training for the dispatcher position.  As a result, the Borough proved that Mitchell violated N.J.A.C. 4A:2-6.2(b).

Mitchell argues to us that the CSC failed to consider his May 30, 2012 letter "wherein he informed the Borough he was not attending training[.]"  Respectfully, the letter says no such thing.  It simply states that Mitchell intended to pursue his accidental disability pension, and, without any authority or approval by the Borough, he intended to remain on sick leave.

Mitchell contends that the CSC failed to consider that he never accepted the dispatcher position.  As an appellate court, however, "it is not for us . . . to disturb [the] credibility determination[s]" of the ALJ, as adopted by the CSC, "made after due consideration of the witnesses' testimony and demeanor during the hearing."  H.K. v. State, 184 N.J. 367, 384 (2005) (citing Clowes, 109 N.J. at 587).

The ALJ cited our opinion in State-Operated School District of Newark v. Gaines, 309 N.J. Super. 327 (App. Div. 1998).  There, writing for our court, Judge Baime said, "The objectives of our civil service laws . . . include rewarding employees for 'meritorious performance' and 'separat[ing]' others

whose conduct of their duties is less than adequate." Id. at 332 (alteration in original) (quoting N.J.S.A. 11A:1-2(c)). "Our laws, as they relate to discharges or removal, are designed to promote efficient public service, not to benefit errant employees." Id. at 334.

The decision of the CSC "is supported by sufficient credible evidence on the record as a whole[.]" R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION