**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3041-20

IN THE MATTER OF W.D.,
POLICE OFFICER (S9999A),
NORTH BRUNSWICK
TOWNSHIP.

_____

Argued November 30, 2022 – Decided November 15, 2023

Before Judges Gooden Brown and DeAlmeida.

On appeal from the New Jersey Civil Service Commission, Docket No. 2021-822.

Robert K. Chewning argued the cause for appellant W.D. (McLaughlin & Nardi, LLC, attorneys; Maurice W. McLaughlin and Robert K. Chewning, on the briefs).

Katie Mocco argued the cause for respondent Township of North Brunswick (DeCotiis Fitzpatrick Cole & Giblin, LLP attorneys; Katie Mocco and Taylor Dawn Wood, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Appellant W.D. appeals from the May 24, 2021 final agency decision of the Civil Service Commission (Commission) upholding North Brunswick Township's removal of his name from an eligible list for the position of police officer.[1]  We affirm.

I.

In 2019, W.D. took the open competitive examination for police officer with the North Brunswick Police Department.  He achieved a passing score and was placed on the eligible list.

In response to a request from North Brunswick, in September 2020, W.D. applied for the position of police officer.  He was required to complete a pre-employment background check application.  The application stated that "[a]ny misstatement of fact, omissions or attempt to mislead this agency, its investigators or the appointing authority, deliberate or in error, may lead to your disqualification."  In addition, the application provided that

> [i]f there is other information which may be relevant, directly or indirectly, that this agency should have knowledge of in order to conduct a thorough background investigation of you, as a candidate for employment in this agency, or insufficient space was

---

[1]  We identify appellant by his initials to protect the confidentiality of records relating to domestic disputes.  R. 1:38-3(c)(12).

provided above for complete answers, you are required to add this additional information on a separate sheet(s). . . . You are reminded that any false or deliberate misstatement of facts can result in your disqualification for employment by this agency.

This appeal concerns W.D.'s responses to three of the questions on the background check application.

Question 73 asked "[h]ave you ever been arrested, indicted, or convicted for any violation of the criminal law? If yes, comp[l]ete the information required below." W.D. responded, "[y]es" and provided the following information: "Date: 9/11/12 Violation: 2C:12-1(A) Age: 27 Location: Carteret, NJ Court Disposition: Dismissed Penalty: N/A Police Agency Involved: Carteret." N.J.S.A. 2C:12-1(a) criminalizes simple assault.

On a separate "continued page," W.D. provided the following information in response to Question 73:

> Other police contact 08/04/2019 North Brunswick Police Responded to my residence around the hours of 00:43
>
> 09/24/2017 North Brunswick Police Department Responded to my residence around the hours of 18:34
>
> 08/31/2018 North Brunswick Police Department Responded to my residence around the hours of 01:14

W.D. also provided police dispatch reports for the three incidents.

3

The dispatch report for August 4, 2019, states that officers responded to W.D.'s residence at 12:43 a.m. for "Incident Type" "DOMESTIC." In addition, the report states: "REPORT TAKEN" and "THERE ARE 18 INCIDENTS OVER 1 YEAR OLD." The report provides no further relevant information.

The dispatch report for September 24, 2017, states that officers responded to W.D.'s residence at 6:34 p.m. for "Incident Type" "DISTURBANCE." The report indicates: "CALLER WHO WANTED TO REMAIN ANONYMOUS STATED SHE HEARD YELLING AND SCREAMING FROM THE ABOVE ADDRESS." In addition, the report states, "MADE CONTACT WITH HOMEOWNER [W.J.] D/O/B [a date other than W.D.'s birthday] WHO STATED HE MAY HAVE BEEN YELLING DURING A TELEVISED FOOTBALL GAME. NOTHING FURTHER TO REPORT AT THIS TIME." The report noted that "THERE ARE 17 INCIDENTS OVER 1 YEAR OLD."[2]

---

[2] It is not clear if this incident report refers to W.D., given that the homeowner is reported as W.J., although the first name in the report is the same as W.D.'s first name and the last name in the report is similar to W.D.'s last name but beginning with a "J." In addition, the birthday reported is the numeric for W.D.'s day of birth followed by the numeric for his month of birth, followed by his year of birth. The Commission made no findings with respect to whether W.D. provided an incorrect last name, if the officer misheard W.D.'s last name, or if someone other than W.D. informed the officers that he was the owner of W.D.'s home. The parties have proceeded as though the report refers to W.D.

The dispatch report for August 31, 2018, states that officers responded to W.D.'s residence at 1:14 a.m. for "Incident Type" "DOMESTIC." The report provides that "Caller stating that her husband was breaking things inside the house. While attempting to obtain more information the phone cut out. No response on callback." The report also provides: "UPON ARRIVAL WE WITH (sic) BOTH PARTIES, NAM: [W.D.], OLN: [REDACTED] . . . & HIS WIFE: NAM: [REDACTED], OLN: [REDACTED]. BOTH PARTIES STATED THAT THE ARGUMENT WAS OVER THE CABLE TV AND THERE WAS NO PHYSICAL CONTACT. [W.D.] LEFT FOR THE EVENING W/O FURTHER INCIDENT." The report further states: "ALSO BE ADVISED THAT THE HOME WAS ORDERLY AND WE FOUND NOTHING BROKEN" and "THERE ARE 17 INCIDENTS OVER 1 YEAR OLD."

Question 76 asked "[h]ave you ever been held as a suspicious person or investigated by any law enforcement or private security agency for any reason? If yes, give details below." W.D. responded, "[n]o."

Question 84 asked "[h]ave you ever received a summons for violation of the Motor Vehicle Laws in this or any other state? If yes, insert the required information below." W.D. answered "[y]es." He listed five offenses: One from 2004, two from 2008, one from 2010, and one from 2012. W.D. also attached a

5

New Jersey Motor Vehicles Commission (MVC) abstract of driver history record, which listed the five violations that were reported in response to question 84, and stated that he was "involved in accident – police report" relating to the 2004 violation and was "involved in accident – police report" on three occasions for other incidents, once in 2011, once in 2012, and once in 2013.

W.D. signed the application with a sworn statement that said, "I, [W.D.], being duly sworn, depose and say I am the above[-]named person.  I personally read and entered answers to each and every question therein and I do solemnly swear that each and every answer is full, true and correct in every respect."

North Brunswick decided to remove W.D. from the eligible list because he: (1) failed to disclose four motor vehicle violations in response to Question 84 that North Brunswick uncovered by checking MVC records; (2) failed to disclose the complete details of his interactions with police in response to Question 73; (3) failed to respond accurately to Question 76; and (4) was involved in multiple domestic disputes, including one in which his wife in a recorded 9-1-1 call stated that W.D. "choked me" and "threatened to kill me," although she later recanted those accusations and had no physical injuries.

On December 1, 2020, the Commission notified W.D. that North Brunswick had removed his name from the eligible list "because documentation

indicates you falsified your application for this position." W.D. appealed North Brunswick's decision to the Commission.

North Brunswick thereafter submitted a written explanation for its decision to remove W.D. from the eligible list. The municipality asserted that W.D.'s removal was justified by: (1) his failure in response to Question 76 to list three police investigations, two involving domestic violence, that took place at his residence on September 24, 2017, August 31, 2018, and August 4, 2019, and to provide details of those investigations. The municipality argued that these omissions justified W.D.'s removal pursuant to N.J.A.C. 4A:4-6.1(a)(6) (authorizing removal from eligible list where a candidate "[h]as made a false statement of any material fact or attempted any deception or fraud in any part of the selection or appointment process . . . ."); N.J.A.C. 4A:4-6.1(a)(9) (authorizing removal from eligible list for "[o]ther sufficient reasons."); and N.J.S.A. 40A:14-9(4), which appears to be a typographic error, as that statute applies to the appointment of firefighters, as well as Karins v. City of Atlantic City, 152 N.J. 532, 562 (1998) (holding that an appointing authority can make civil service employment decisions based on conduct that deteriorates the public trust). In addition, North Brunswick argued that the material omissions indicate non-compliance with the instructions in the application, a separate ground for

removal from the eligible list pursuant to N.J.A.C. 4A:4-4.7(a)(6) (authorizing removal from eligible list for "[n]on-compliance with the instructions listed on the notice of certification.");

(2) his failure in response to Question 84 to disclose four motor vehicle violations, one each on June 19, 2011, October 1, 2014, October 21, 2014, and November 12, 2014. The municipality argued that these omissions justified W.D.'s removal pursuant to N.J.A.C. 4A:4-6.1(a)(6), N.J.A.C. 4A:4-6.1(a)(9) and N.J.S.A. 40A:14-9(4), as well as Karins, 152 N.J. at 562, and N.J.A.C. 4A:4-4.7(a)(6).

W.D. argued that although he answered "[n]o" to Question 76, he provided the information then available to him with respect to all of his interactions with police in response to Question 73. In addition, he produced in support of his appeal additional police reports about the three incidents, which he alleged he had requested prior to completing the application, but which North Brunswick did not produce because W.D. was not identified as the victim in the incidents.

W.D. certified that he answered Question 84 based on the certified driver history abstract that he obtained from MVC. He certified that he believed that the abstract listed all motor vehicle summons that he received.

On May 24, 2021, the Commission issued its final decision upholding W.D.'s removal. The Commission began its analysis with its consideration of W.D.'s request for a hearing. The agency noted that eligible list removal appeals are reviewed on the written record, unless it finds that a material and controlling factual dispute requires a hearing. See N.J.S.A. 11A:2-6(b). Having found no such dispute, the Commission proceeded without a hearing.

Regarding W.D.'s inaccurate answer to Question 76, the Commission noted that "the primary inquiry in such a case is whether the candidate withheld information that was material to the position sought, not whether there was any intent to deceive on the part of the applicant." Even if W.D.'s response to Question 73 is considered as responsive to Question 76, the Commission found that, regardless of W.D.'s intent, his "one sentence sparse responses" to Question 73 "and the submitted reports were not sufficient" to alert North Brunswick to the extent of his involvement in these incidents. The Commission determined that W.D. "failed to provide a more detailed narrative regarding these incidents as required in response to 76." The agency found that the information W.D. failed to disclose was material and his failure to disclose it was "indicative of [W.D.'s] lack of integrity and questionable judgment. Such qualities are unacceptable for an individual seeking a position as a Police Officer."

A-3041-20

Regarding Question 84, the Commission found that W.D. was responsible for the accuracy of the information disclosed in his application and that there is legal precedent for removing police officer candidates because of poor driving records, which demonstrate a disregard for the law. The Commission found W.D.'s omission of four motor vehicle violations to be material to North Brunswick's analysis of his background and suitability to be a police officer.

The Commission also found that the record established W.D.'s "continuous negative interactions with the law from August 2004 including right up to the August 31, 2019 closing date" of the test. This history, the Commission found, "indicates that [W.D.] currently lacks the good judgment needed to be a Police Officer." The Commission explained,

> it is recognized that a municipal Police Officer is a law enforcement employee who must enforce and promote adherence within (sic) to the law. Municipal Police Officers hold highly visible and sensitive positions within the community and that (sic) the standard for an applicant includes good character and an image of the utmost confidence and trust. It must be recognized that a municipal Police Officer is a special kind of employee. His primary duty is to enforce and uphold the law. He carries a service revolver on his person and is constantly called upon to exercise tact, restraint and good judgment in his relationship with the public. He represents law and order to the citizenry and must present an image of personal integrity and dependability in order to have the respect of the public. See Moorestown v. Armstrong, 89 N.J. Super. 560, 566

(App. Div. 1965), <u>cert. denied</u>, 47 N.J. 80 (1966). <u>See also</u> <u>In re Phillips</u>, 117 N.J. 567 (1990).

The Commission, therefore, upheld North Brunswick's removal of W.D. from the eligible list for police officer.

This appeal follows. W.D. argues: (1) the Commission's decision is arbitrary, capricious and lacking in evidentiary support because the agency did not consider the dispatch reports and MVC abstract W.D. submitted with his application; (2) the Commission did not identify the material information W.D. failed to include in his answer to Question 76 (via his answer to Question 73); (3) W.D. reasonably believed his MVC driving history abstract included all of the motor vehicle violations he committed and three of the unreported violations were for W.D. driving through red lights during a pilot program, which is no longer in place, that used cameras to capture red light violations; (4) there is insufficient support for the Commission's finding that W.D.'s interactions with law enforcement and driving record render him unsuitable for the position of police officer; and (5) the Commission should have referred W.D.'s appeal to a hearing officer to resolve disputes of material fact.

II.

Our role in reviewing the decision of an administrative agency is limited. <u>Circus Liquors, Inc. v. Middletown Twp.</u>, 199 N.J. 1, 9 (2009). We will not

11

disturb the decision of the Commission absent a showing "that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act." Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963).

Decisions of administrative agencies carry with them a presumption of reasonableness. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001). Moreover, "[a]ppellate courts must defer to an agency's expertise and superior knowledge of a particular field." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992). However, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

"There is no constitutional or statutory right to a government job." State-Operated Sch. Dist. v. Gaines, 309 N.J. Super. 327, 334 (App. Div. 1998). In an appeal from a disciplinary action or ruling by an appointing authority, the appointing authority bears the burden of proof to show, by a preponderance of the evidence, that the action taken was appropriate. N.J.S.A. 11A:2-21; N.J.A.C. 4A:2-1.4(a); In re Polk, 90 N.J. 550, 560 (1982).

"The name of an eligible may be removed from an eligible list for any of the following reasons: . . . [t]he causes for disqualification listed in N.J.A.C.

4A:4-6.1 . . . ." N.J.A.C. 4A:4-4.7(a). As noted above, N.J.A.C. 4A:4-6.1(a)(6) provides that a candidate may be removed from the eligible list when he "[h]as made a false statement of any material fact or attempted any deception or fraud in any part of the selection or appointment process . . . ." In addition, a candidate may be removed from an eligible list for "[o]ther sufficient reasons[,]" N.J.A.C. 4A:4-6.1(a)(9), including conduct that would undermine the public trust, Karins, 152 N.J. at 562.

We have carefully reviewed W.D.'s arguments in light of the record and applicable legal principles, and conclude the Commission's final agency decision is adequately supported by the record and is not arbitrary, capricious, or unreasonable.

There is no dispute that W.D. answered Question 76 inaccurately. He did not disclose in response to that question that he had been the subject of police investigations on three occasions at his residence. While he provided minimal information regarding those incidents in response to Question 73, he did not explain in detail his involvement in the events that resulted in the need for police to respond to his residence three times. In addition, it is not disputed that W.D. failed to report four motor vehicle violations. The Commission was well within its discretion to determine that W.D.'s purported reliance on the MVC driver

13

history abstract did not excuse his failure to fully disclose his extensive history of motor vehicle violations. We cannot discern the relevance of W.D.'s argument that three of the violations arose from a camera capturing him ignoring a red light.

We also see no grounds to disturb the Commission's determination that W.D.'s involvement in two, and possibly three, domestic incidents that triggered a police response, along with his long-term and repeated violations of the motor vehicle laws are incompatible with the position of police officer.

To the extent we have not specifically addressed any of W.D.'s remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3041-20