**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0903-22

IN THE MATTER OF MICHAEL
DALRYMPLE, EDNA MAHAN
CORRECTIONAL FACILITY,
DEPARTMENT OF
CORRECTIONS.

---

Argued February 26, 2024 – Decided March 18, 2024

Before Judges Sabatino and Marczyk.

On appeal from the New Jersey Civil Service Commission, Docket No. 2022-1829.

Matthew Cosmo Dorsi argued the cause for appellant Michael Dalrymple (DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys; Matthew Cosmo Dorsi and Rachel E. Campbell, on the briefs).

Craig S. Keiser, Deputy Attorney General, argued the cause for respondent New Jersey Civil Service Commission (Matthew J. Platkin, Attorney General, attorney; Craig S. Keiser, on the statement in lieu of brief).

Kendall James Collins, Deputy Attorney General, argued the cause for respondent Edna Mahan Correctional Facility, Department of Corrections (Matthew J. Platkin, Attorney General, attorney; Donna

Sue Arons, Assistant Attorney General, of counsel; Andrew J. Sarrol, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Michael Dalrymple, a state corrections employee, appeals from the November 2, 2022 final agency decision of the Civil Service Commission ("CSC") imposing a thirty-day working suspension and denying his request for attorney fees. Based on our review of the record and the controlling legal principles, we affirm.

I.

On June 13, 2020, at the Edna Mahan Correctional Facility of the New Jersey Department of Corrections ("DOC"), Corrections Officer Gavyn Alte observed an inmate, Jennifer Whalen, attempting to take food out of the cafeteria. What transpired thereafter is central to the underlying investigation that became the subject of petitioner's disciplinary action. There was a factual dispute as to what actions Officer Alte took when he discovered Whalen with the food. Whelan filed a grievance claiming she was forced to consume the food against her will, Officer Alte laughed at her during the process, and she was humiliated by the incident.

The investigation was assigned to petitioner, who was employed as an investigator for the DOC's Special Investigations Division ("SID"). He interviewed: (a) Whalen; (b) inmate Rebecca Austria, who was present at the time of the incident; (c) three other inmates who were working in the kitchen during the incident; (d) Officer Silwia Blizniak; and (e) Officer Alte.

Petitioner video-recorded the inmate interviews. According to Whalen, Officer Alte noticed she was trying to remove food and told her and Austria they could either eat the food or receive a disciplinary charge. Whalen ate the food. Austria confirmed Whalen's account. Petitioner also conducted "cursory interviews" of the other inmates in a group setting rather than individually. He reported the other inmates "provided an identical account of the incident . . . which was gleaned from the statements of inmates Whalen and Austria earlier in the day."

In her video-recorded interview, Officer Blizniak stated Officer Alte told Whalen and Austria they could not take the food out of the kitchen, and they had to either eat it or throw it away. Officer Blizniak stated Whalen ate the food. Officer Blizniak emphasized, "[Officer Alte] pretty much gave her . . . a choice. She can't take the [food] out because it would be stealing. So you can eat it here or throw it out. That's it."

A-0903-22

Petitioner also interviewed Officer Alte and memorialized his statement in a video recording. Officer Alte stated he had searched inmate Austria's bag and found a cup containing food. It was not clear if it was Whalen's or Austria's food. He advised them they had to eat the food or throw it out. Officer Alte stated that Whelan volunteered to eat the food.

The disciplinary action against petitioner stems from his report regarding the statement made by Officer Blizniak. Contrary to Officer Blizniak's recorded statements, petitioner's report indicates her statement supported Whelan's version of the events and contradicted Officer Alte's account of the incident. Specifically, the report noted, "[Officer] Blizniak stated [Officer] Alte gave inmate Whalen the choice to either eat the [food] or receive a disciplinary charge for stealing." The report also stated, "[i]t is important to note [Officer] Blizniak reiterated multiple times that [Officer Alte] gave inmate Whalen 'a choice' between being issued a disciplinary charge and eating the [food]." The report further indicated, "[i]t is noted [Officer] Alte's narrative of the incident contradicts what four inmate witnesses, and a fellow custody staff member [Officer Blizniak], had previously provided." Petitioner's report "concluded by a preponderance of the evidence that [Officer] Alte was untruthful in his characterization of the incident."

A-0903-22

In July 2020, a legal specialist for the DOC's Office of Employee Relations expressed concern because petitioner's report included the above-referenced inaccuracies. An investigation ensued, which was conducted by SID Investigator Timathy Gonzalez. As part of his investigation, Investigator Gonzalez compared the three statements in petitioner's report to Officer Blizniak's video-recorded statement and found the statements contradicted each other.[1]

Investigator Gonzalez interviewed petitioner. Petitioner conceded there were various aspects of his report regarding Officer Blizniak's statements that were in conflict with her video-recorded interview. He further acknowledged Officer Blizniak's recorded statements were exculpatory for Officer Alte. He agreed his report misrepresented facts regarding Officer Blizniak's statement, but he claimed it was not intentional.

---

[1] Reviewing the video evidence, Investigator Gonzalez found Officer Blizniak never told petitioner Officer Alte limited Whalen's choice to either eating the food or receiving a disciplinary charge. Officer Blizniak never "reiterated multiple times that [Officer Alte] gave inmate Whalen 'a choice' between being issued a disciplinary charge and eating the [food]." Rather, Officer Blizniak reiterated multiple times Officer Alte gave Whalen the opportunity to either finish eating the food or throw it out.

A-0903-22

In October 2020, following Investigator Gonzalez's investigation, the DOC served petitioner with a preliminary notice of disciplinary action seeking his removal. In January 2022, following a departmental hearing, the DOC served petitioner with a final notice of disciplinary action for violations of (a) N.J.A.C. 4A:2-2.3(a)(6), conduct unbecoming a public employee; (b) N.J.A.C. 4A:2-2.3(a)(12), other sufficient cause; and (c) other departmental policy violations.[2] As a result, petitioner was terminated.

Petitioner appealed to the CSC, which transmitted the matter to the Office of Administrative Law as a contested case. Hearings were held in June 2022, before an Administrative Law Judge ("ALJ"), who issued an initial decision in September 2022, dismissing the charges.

---

[2] The final notice of disciplinary action included the following DOC specific disciplinary offenses proscribed in Human Resources Bulletin ("HRB") 84-17:

> C-8, Falsification: Intentional misstatement of material fact in connection with work, employment application, attendance, or in any record, report, investigation or other proceeding; C-11, Conduct unbecoming an employee; D-20a, Unauthorized personal use of computers, copiers or other State equipment or more than an incidental or occasional use of State telephones for non-work related reasons; and E-1, Violation of a rule, regulation, policy, procedure, order or administrative decision.

The ALJ found "that the statement of [Officer Blizniak] was incorrectly reported in petitioner's report." However, the ALJ concluded the DOC had not demonstrated by a preponderance of the evidence the false statements in his report were intentional and that he had engaged in unbecoming conduct. The ALJ also dismissed the other charges.[3]

On November 2, 2022, the CSC modified the ALJ's decision. It agreed that the falsification charge could not be upheld, but disagreed with the ALJ and sustained the conduct unbecoming charge under N.J.A.C. 4A:2-2.3(a)(6). In sustaining the conduct unbecoming charge, the CSC noted petitioner's conduct could be better characterized as "'[i]ncompetency, inefficiency or failure to perform duties' or '[n]eglect of [d]uty.' However, given . . . the type of deficiencies demonstrated by [petitioner] can have a negative effect on the perception of the public on public employees, the charge of conduct unbecoming a public employee is sustainable." It found his false statements "were

---

[3]  The ALJ concluded petitioner had not violated any rules regarding investigative technique. The ALJ also found that the charges related to petitioner's investigative techniques should be dismissed because "there were no specific rules cited that were clearly violated." The ALJ further found the unauthorized use of State equipment charge was both de minimis and not timely filed. These dismissed charges are not at issue in this appeal.

significant, especially for an [i]nvestigator whose entire job is to present as accurate information as possible."

The CSC noted—although not officially in the record—petitioner had been disciplined before and received a thirty-working-day suspension in 2017. The CSC observed there was also reference in his record to an indefinite suspension in October 2020, but it was not sure it was ever "enacted or served." Regardless, the CSC concluded "the penalty imposed in this matter [was] appropriate without regard to that suspension." The CSC further stated, "[m]oreover, even if his official records are incorrect, the penalty imposed in this matter is appropriate given the charges sustained and the nature of the incidents." Lastly, the CSC concluded that because it found petitioner violated N.J.A.C. 4A:2-2.3(a)(6), he was not entitled to counsel fees as he did not prevail on all or substantially all of the primary issues on appeal.

## II.

Petitioner argues the CSC improperly considered his disciplinary history that involved documents outside the record. Petitioner further asserted the CSC erred in determining N.J.A.C. 4A:2-12(a) precluded an award of counsel fees. Petitioner also contends the CSC's decision on the merits and its ruling regarding

8

attorney fees was against the weight of the evidence. The DOC has not cross-appealed, and it accepts the CSC's ruling and reduced sanction.

Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Id. at 27-28. The burden of proving a decision was arbitrary, capricious, or unreasonable is on the party challenging the agency action. Lavezzi v. State, 219 N.J. 163, 171 (2014).

When reviewing an agency decision, we examine:

> (1) whether the agency's action violates express or implied legislative policies . . . ;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

A-0903-22

Where an agency's decision satisfies these criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, recognizing "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). "That deferential standard applies to the review of disciplinary sanctions as well." In re Herrmann, 192 N.J. at 28. Under that standard, the test for reviewing administrative sanctions is "whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Id. at 28-29 (quoting In re Polk, 90 N.J. 550, 578 (1982)).

A.

Petitioner contends the CSC violated his due process rights because it considered prior disciplinary actions against him which were not part of the record before the ALJ. Initially, we observe the parties did address petitioner's work history including a suspension during the testimony of Deputy Chief Spratley. There appeared to be an agreement that the parties would stipulate petitioner had a prior thirty-day suspension, and it would be addressed in the closing briefs. It is not clear, however, what was ultimately submitted to the

10

ALJ. Regardless, we are satisfied the CSC did not improperly consider petitioner's history because it clearly noted that regardless of the prior records, "the penalty imposed in this matter is appropriate given the charges and the nature of the incidents." That is, the CSC determined, independent of any prior disciplinary history, the current charges warranted a thirty-day suspension. As such, we determine petitioner was not prejudiced, and the CSC did not act in an arbitrary, capricious, or unreasonable manner in imposing the suspension.

B.

Petitioner next argues the CSC erred in precluding attorney fees, and its denial of the fees is an attempt to protect the DOC to the detriment of petitioner. He claims because he was facing termination, and because he did not make any material misstatements and overcame "all of the said allegations," he was entitled to attorney fees.

Under N.J.A.C. 4A:2-2.12(a), the CSC "shall award partial or full reasonable counsel fees incurred in proceedings before it and incurred in major disciplinary proceedings at the departmental level where an employee has prevailed on all or substantially all of the primary issues before the Commission."

11

Although petitioner was not terminated, the CSC's denial of counsel fees under N.J.A.C. 4A:2-2.12(a) was appropriate because petitioner did not prevail on all or substantially all of the primary issues in the appeal and "major discipline was imposed."  That he was not terminated is not dispositive to our inquiry.  The central issue here involved the conduct of petitioner, not the sanction ultimately imposed.  Because he did not prevail on the charge of conduct unbecoming an employee under N.J.A.C. 4A:2-2.3(a)(6) and major discipline was imposed, the CSC did not err in finding petitioner failed to "prevail[] on all or substantially all of the primary issues before the Commission" under N.J.A.C. 4A:2-2.12(a).

C.

Relying on the ALJ's findings, petitioner next argues the CSC's decision to suspend him and deny his request for attorney fees, in the absence of intentional conduct, was against the weight of the evidence.

"There is no constitutional or statutory right to a government job."  State-Operated Sch. Dist. v. Gaines, 309 N.J. Super. 327, 334 (App. Div. 1998).  Civil Service employees' rights and duties are governed by the Civil Service Act, which provides that a public employee may be subject to major discipline for various employment-related offenses.  N.J.S.A. 11A:1-1 to -12.6.; N.J.A.C.

4A:2-2.3. A public employee protected by the provisions of that Act may be subject to major discipline for a wide variety of offenses connected to their employment and the general causes for such discipline are set forth in N.J.A.C. 4A:2-2.3(a), which provides, in pertinent part: "[a]n employee may be subject to discipline for . . . [c]onduct unbecoming a public employee."

"Conduct unbecoming a public employee," N.J.A.C. 4A:2-2.3(a)(6), is an "elastic" phrase encompassing "any conduct which adversely affects . . . morale or efficiency [or] which has a tendency to destroy public respect for [public] employees and confidence in the operation of [public] services." Karins v. City of Atl. City, 152 N.J. 532, 554 (1998) (quoting In re Emmons, 63 N.J. Super. 136, 140 (1960)). Conduct that "has the tendency to destroy public respect for [public] employees and public confidence in the operation of" the public entity is intolerable. Id. at 557.[4]

---

[4] The CSC is the New Jersey State agency authorized to render "the final administrative decision on appeals concerning permanent career service employees" facing suspension or removal. N.J.S.A. 11A:2-6(a). By law, the CSC is empowered to "increase or decrease the penalty imposed by the appointing authority." N.J.S.A. 11A:2-19. This is what happened in this case. The appointing authority imposed termination, the ALJ dismissed the charges, and the CSC imposed a thirty-day retroactive suspension on the basis of sustaining the charge of unbecoming conduct.

Here, the CSC found that petitioner violated the rule of conduct unbecoming a public employee under N.J.A.C. 4A:2-2.3(a)(6).[5] In doing so, the CSC agreed with the ALJ that the record did not support an intentional misstatement of fact, but disagreed with the ALJ because the false or inaccurate statements in petitioner's report are consistent with the conduct unbecoming of a public employee charge which it noted "can be sustained as such a lack of accuracy could tend to destroy the public's trust in such investigations and the . . . competency of such public employees engaged in such investigations in a correctional setting." Furthermore, the CSC noted that it has generally found "inaccuracies in reporting for correctional staff are worthy of a significant suspension," and that "the inaccuracies were significant, especially for an [i]nvestigator whose entire job is to present as accurate information as possible . . . ." These inaccuracies were not disputed. Petitioner acknowledged the statements he reported from Officer Blizniak conflicted with her videotaped statements. Furthermore, petitioner acknowledged Officer Blizniak's actual

_____

[5] Petitioner reiterates throughout his briefs that the ALJ's findings support his position. However, it is well-established the CSC is not bound by the factual findings and legal conclusions of an ALJ unless otherwise provided by statute. N.J.A.C. 1:1-18.1(d).

statement would have been exculpatory for Officer Alte, who could have suffered dire consequences from this misrepresentation.

We affirm because the CSC's decision meets the criteria of Allstars, 234 N.J. at 157, and petitioner has failed to demonstrate the CSC's decision was arbitrary, capricious, or unreasonable; lacked sufficient support in the record; or involved an erroneous interpretation of law. Substantial credible evidence demonstrated petitioner's investigation report contained fundamental errors. The evidence established petitioner's statements, if never discovered, could have resulted in major discipline and potential criminal charges for Officer Alte. We conclude the CSC did not act arbitrarily, and there was ample evidence to support its decision sustaining the conduct unbecoming charge and denying the request for attorney fees.

Moreover, given our deferential standard of review regarding disciplinary sanctions, In re Herrmann, 192 N.J. at 28, under the totality of the circumstances presented here, the imposition of a thirty-day suspension does not shock one's sense of fairness. Id. at 28-29 (quoting In re Polk, 90 N.J. at 578). Rather, it reflects the CSC's judgment that the inaccuracies in petitioner's report, even if not intentionally false, were worthy of a significant suspension, particularly given petitioner's responsibilities as an investigator to "present as accurate

A-0903-22

information as possible" in light of the serious ramifications faced by the subjects of the investigation.

We discern no basis to disturb the CSC's findings and conclude the decision was not arbitrary, capricious, or unreasonable. To the extent we have not specifically addressed any of petitioner's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-0903-22